## 20704

ARA SERVICES, INC., Respondent, v. SOUTH CAROLINA TAX COMMISSION, Appellant.

(246 S. E. (2d) 171)

*Atty. Gen. Daniel R. McLeod, Deputy Atty. Gen. Joe L. Allen, Jr.,* and *Asst. Attys. Gen. G. Lewis Argoe, Jr.,* and *John C. von Lehe,* Columbia, *for appellant.*

*W. Francis Marion,* of *Haynsworth, Perry, Bryant, Marion & Johnstone,* Greenville, *for respondent.*

June 5, 1978.

LITTLEJOHN, Justice:

The appellant, South Carolina Tax Commission, assessed ARA Services, Inc. (ARA) $167,396.45 for sales taxes alleged to be due under § 65-1401, *Code of Laws of South Carolina* (1962) [1]. This amount, representing taxes, interest, penalty and license fees, was paid under protest by ARA, which then brought this action pursuant to §§ 65-1466, 65-1467 and 65-2661 and 65-2662 [2] of the 1962 *Code, as amended* (Supp. 1975). These Code sections permit a taxpayer to pay contested items under protest and then sue for recovery of the amount paid.

The South Carolina Sales Tax Law requires sellers at retail to collect and pay to the State a 4% sales tax. It does not require that sales tax be paid by wholesalers. The question for determination by the court is whether the sales involved were made at retail or at wholesale. The lower court held that ARA's transactions were wholesale sales and ordered the Tax Commission to refund the money paid under protest. The Commission has appealed, asserting that the lower court should have denominated ARA's transactions retail sales rather than wholesale sales.

The facts upon which our determination must hinge are not in dispute. During the years in question (February 1, 1972, to August 31, 1975), ARA sold meals in this State to fourteen eleemosynary-type organizations, called sponsors, which conducted federally supported summer lunch programs for indigent children. The programs were among those established by the Department of Agriculture pursuant to § 13 of the National School Lunch Act, 42 U.S.C.A. § 1751, *et seq., as amended,* for the purpose of assisting states

[1] Now codified as § 12-35-510 (1976).
[2] Now codified as § 12-35-1430 and 12-35-1440.

and local body politics through grants-in-aid and other means, to initiate, maintain, or expand food service programs for children.

ARA entered into a written contract with each of the local sponsors which were referred to in the contracts as "purchasers." The preamble if the contract stipulated that ". . . purchaser is desirous of purchasing meals *for consumption by children* under the Special Summer Service Program for Children of the United States Department of Agriculture . . .." (Emphasis added.) No federal agency was a party to the contract. The Department of Agriculture entered into a separate reimbursement contract with the local sponsors. The reimbursement agreement was for an amount more than that paid by the sponsor to ARA.

The contracts between ARA and the sponsors provided as follows: "Billing shall be made monthly and *purchaser will pay* such billings within ten (10) days of the invoice date." (Emphasis added.)

South Carolina Code § 12-35-510 (1976) imposes a sales tax:

". . . upon every person engaged or continuing within this State in the business of selling at retail any tangible personal property whatsoever, including merchandise and commodities of every kind and character . . .."

We think that the lower court erred in holding that ". . . ARA's sales were sales at wholesale and that . . . the sales tax was erroneously assessed." It was the reasoning of the lower court that: "The sponsor, in turn, sold the meals to the consuming children or to the federal agency through a program of reimbursement."

The meals were never sold by the sponsors to the children. The entire record indicates that everyone involved knew that this was a give-away program. Even though the sponsors could have charged the children, Mr. Dennis of the Depart-

ment of Agriculture testified that he did not remember any child ever having paid anything for meals provided by the summer lunch programs in South Carolina between 1972 and 1975. ARA's Mr. Koester testified as follows:

"Q. At the time of the signing that receipt who becomes liable for the payment of that lunch?

"A. In our opinion the sponsor that we've contracted to provide the lunches for.

.    .    .    .    .

"Q. Do you receive any check whatsoever from the federal government?

"A. No, we don't."

It is apparent that no sale was ever contemplated or was ever made by the sponsors to either the children or the Department of Agriculture. Accordingly, the last transaction for a consideration involved ARA as vendor and the sponsors as vendees. Code § 12-35-170 defines "wholesale sale" and "sale at wholesale" as follows:

"The terms *"wholesale sale"* and *"sale at wholesale"* mean a sale of tangible personal property by wholesalers to licensed retail merchants, jobbers, dealers or other wholesalers *for resale,* and do not include a sale by wholesalers to users or consumers, not for resale." (Emphasis added.)

ARA argues that there were two distinct sales of the meals. It is maintained that ARA sold the meals to the sponsors, who in turn sold the meals to the children, and that the consideration for the sale from the sponsors to the children was provided by the Department of Agriculture. We are of the opinion that the fact that the Department of Agriculture reimbursed the sponsors for their costs does not convert the giving of meals from the sponsors to the children into a sale. The Department of Agriculture never owned the meals, and the sponsors were obligated to pay for them regardless of whether they were ever reimbursed by the Department.

The facts in this case are unlike those in *Slater v. South Carolina Tax Commission,* S. C., 242 S. E. (2d) 439.

(1978). There, meals were purchased from Slater, a subsidiary of ARA, for resale to students at colleges. The meals were then actually resold to the students who paid the colleges for them. Accordingly, Slater's sale to the colleges were not the last transfer of the meals for consideration, and thus were wholesale transactions.

ARA has submitted to the court three additional sustaining grounds. The case was tried by the lower court on stipulations which are included in the record before us. A careful examination of the stipulations convinces us that the lower court would not have been justified in granting relief to ARA on the basis of any of the sustaining grounds enumerated.

The lower court should have dismissed the complaint, and the order of that court is

Reversed.

LEWIS, C. J., and RHODES and GREGORY, JJ., concur.

NESS, J., dissents.

NESS, Justice (dissenting) :

Believing the trial court correctly characterized ARA as a wholesaler, I dissent.

Initially, the sponsors were given the option of either preparing the meals or hiring a caterer. They elected to contract with ARA and paid respondent for the lunches. The sponsors transferred the boxed lunches to the children and then received consideration from the U. S. Department of Agriculture. Accordingly, two distinct sales or transfers of the meals transpired.

In each instance, the payment from the USDA to the sponsor was greater than the amount charged the sponsor by ARA, reflecting costs attributable to the sponsor's serving of the meals to the children. This payment flowing from the federal government to the sponsor was the consideration for the second transfer or sale of the meals to the children.

Therefore, ARA's transfer of the lunches to the sponsor was a sale for resale.

The majority rests its conclusion on the fact the meals were never "sold" by the sponsors to the children. In this way, the majority seeks to distinguish the case from our recent decision in *Slater Corporation v. S. C. Tax Commission*, S. C., 242 S. E. (2d) 439 (1978).

I believe the two cases are strikingly similar. In *Slater*, the colleges purchased the meals from Slater, a subsidiary of ARA, and the students, in turn, purchased the meals from the colleges. In each instance, as here, the students paid the colleges more for the meals than the colleges paid Slater, reflecting the costs incurred by the school in serving the food.

In this case, it is irrelevant that the consideration for the second transfer did not flow directly from the children. In *Slater*, the fact that a college may have received payment for the student's meals from a source other than the student himself (*i. e.*, parents, a scholarship fund, etc.) would not have altered Slater's status as a wholesaler.

The critical consideration is that two sales were involved in each case. According to Code Section 12-35-100, a "sale" is:

"Any transfer, exchange or barter, conditional or otherwise, *in any manner or by any means whatsoever*, of tangible personal property . . ." (Emphasis supplied).

Therefore, it is not necessary for the consumer to give consideration in order for a sale to transpire; it is sufficient if consideration is provided by a third party in the consumer's behalf.

This is not a situation where ARA sold the meals to the sponsor and the sponsor then gave the meals away without receiving consideration from any source. In this case there were two distinct sales pursuant to Code Section 12-35-100 with two distinct considerations passing.

I conclude ARA sold the lunches to the sponsors for re-sale as the sponsors received payment from the USDA when they transferred the meals to the children. I would affirm the order of the trial judge refunding the taxes paid under protest, with interest.