0074

STANTON QUILTING COMPANY, INC., Respondent, v.
SOUTH CAROLINA TAX COMMISSION, Appellant.

(314 S. E. (2d) 844)

Court of Appeals

*Atty. Gen. T. Travis Medlock, Retired Atty. Gen., Daniel R. McLeod, Deputy Atty. Gen. Joe L. Allen, Jr.*, and *Staff Atty. Ray N. Stevens*, Columbia, *for appellant.*

*William P. Griggs*, of *Griggs & Spruill*, Cheraw, *for respondent.*

Feb. 13, 1984.

SANDERS, Chief Judge:

This is a suit brought by Stanton Quilting Company, Inc., for recover of sales taxes paid under protest. The taxes resulted from a determination by the South Carolina Tax Commission that certain sales by Stanton to out of state churches were retail sales and therefore subject to sales tax. The trial judge ruled the sales were not retail sales and ordered the Commission to refund the taxes paid. We affirm.

Stanton is a South Carolina corporation engaged in the business of manufacturing and selling quilts. It sold a large number of these quilts at its South Carolina plant to various out of state churches. The churches bought the quilts for resale in fund raising projects conducted in their home states. A total of 24 such sales were made, 21 of which were to churches located in the state of Kentucky. Stanton and the Commission agreed for the matter to be treated as though all sales were made to Kentucky churches.

The single issue before us is whether the sales are retail or wholesale in nature. As succinctly stated by the Commission in its brief, if the sales are retail sales they are taxable, if they are wholesale sales they are not.

Section 12-35-110 of the Code of Laws of South Carolina (1976), as amended, defines a "retail sale" as "all sales of tangible personal property except those defined in this article as wholesale sales." Section 12-35-170 defines a "wholesale sale" as:

> ... a sale of tangible personal property by wholesalers to licensed retail merchants, jobbers, dealers or other wholesalers for resale, and do not include a sale by wholesalers to users or consumers, not for resale.

It is apparent from the record here that the churches did not buy the quilts from Stanton as "users or consumers" but

rather purchased them for "resale." The Commission contends these sales still would not qualify as wholesale sales under the language of the statute because the churches were not "licensed retail merchants." However, section 12-35-170 also includes as "wholesale sales" sales by wholesalers to "dealers," and the churches here were dealers as that term is commonly understood and defined by law.

> A "dealer" in the popular, and therefore in the statutory, sense of the word, is not one who buys to keep, or makes to sell, but one who buys to sell again. *Aldridge Motors v. Alexander*, 217 N. C. 750, 9 S. E. (2d) 469, 472 (1940).

The Commission argues in its brief that "dealers" are no more than "particular types of wholesalers." We do not read section 12-35-170 in this way. The phrase "other wholesalers" as used in this section clearly refers to the first use of the word "wholesaler" at the beginning of the section. If the phrase "other wholesalers" was meant to modify the word "dealers," then there would have been no point in including the word "dealers" in the section at all. Furthermore, we find numerous cases from other states which define a "dealer" in the same way as the North Carolina Supreme Court in *Aldridge. See Commonwealth v. McKinley-Gregg Automobile Co.*, 345 Pa. 544, 28 A. (2d) 919, 921 (1942); *People v. Terkanian*, 27 Cal. App. (2d) 460, 81 P. (2d) 251, 253 (1938); *American Bakeries Co. v. City of Opelika*, 229 Ala. 388, 157 So. 206, 208 (1934); *State v. J. Watts Kearny & Sons*, 181 La. 554, 160 So. 77, 78 (1934); *See also* Black's Law Dictionary 487 (4th ed. rev. 1968); Cases collected at 11 Words and Phrases, "Dealer" (1971). We find no case, and the Commission has cited none, which defines a "dealer" as simply being a "particular type of wholesaler" as the Commission contends.

The Commission further argues Stanton failed to comply with the requirements of Tax Commission Regulation 117-174.151, in that it did not obtain from the churches their retail license numbers. This regulation provides in pertinent part as follows:

> ... sales of tangible personal property by a South Carolina seller to out-of-state buyers for resale, where delivery is made in this state, are subject to the sales tax, unless the seller thereof takes from the purchaser a

certificate to the effect the property is purchased for resale. The certificate must show the name and business address of the purchaser, date on which the sale was made, description of the property sold and the buyer's out-of-state license number. The certificate must be sworn to and subscribed by the purchaser, who shall indicate the capacity in which he makes such purchases. For example: whether individual, partner, agent or officer of foreign corporation (giving name and address of corporation). No form is prescribed for use by the Tax Commission in this connection. The certificate may be typed upon the invoice of the property sold or a rubber stamp may be used.

Regulation 117-174.151 interprets section 12-35-630, which addresses the matter of who has the burden of proving whether a sale is a retail sale:

For the purpose of the proper administration of this chapter and to prevent evasion of the sales tax, it shall be presumed that all gross receipts are subject to the tax until the contrary is established. The burden of proof that the sale of tangible personal property is not a sale at retail is upon the person who makes the sale, *unless he takes from the purchaser a certificate to the effect that the property is purchased for resale.* (Emphasis added.)

Stanton did obtain numbered certificates from the churches showing they were exempted by the State of Kentucky from paying sales tax on purchases. Stanton apparently also obtained and supplied to the Commission the other information required by this regulation, which specifically disclaims any requirement that a particular form be used. This regulation nowhere refers to a *retail* license number being required as contended by the Commission. Furthermore, it is not necessary that we reach the procedural question of whether the Commission or Stanton has the burden of proof here because, as previously discussed, it is clear the sales are wholesale sales as defined by section 12-35-170.

The Commission argues regulation 117-174.151 is also intended to interpret sections 12-35-110 and 12-35-170 so that no sale where there was a delivery in this state to an out-of-state buyer could be considered a wholesale sale unless made

to one having a retail license number. In our view, this argument is patently fallacious. Section 12-35-170 provides that a number of different kinds of sales are wholesale sales other than sales to licensed retailers. These include sales by wholesalers to "jobbers, dealers or other wholesalers for resale." It would obviously not be possible for a wholesaler to obtain a retail license number in connection with such wholesale sales as these.

Instead, we hold the intent of the legislature was to exempt from sales tax sales to buyers who purchase for resale, not as consumers or for use themselves. It is clear the churches here purchased the quilts from Stanton for resale, not as consumers or for their own use. Thus the sales are exempt from sales tax.

Finally, we call attention to the relatively recent case of *Slater Corporation v. South Carolina Tax Commission,* 270 S. C. 405, 242 S. E. (2d) 439 (1978). This was an action to recover sales taxes paid under protest. Slater had a contract with Clemson University and other schools to furnish food for service in college dining facilities. The Commission maintained the sales by Slater were retail sales and assessed sales taxes against Slater. The trial court ordered a refund and, on appeal, the Supreme Court affirmed, holding:

> The meals in question were clearly purchased for resale with the students buying their food from the colleges rather than from Slater.

> The Lower court correctly characterized Slater as a wholesaler, and we affirm the order refunding the amounts paid under protest, with interest. *Id.* at 409-410, 242 S. E. (2d) at 440.

While nothing is said specifically in this opinion about Clemson being a "licensed retail merchant," it would obviously have been inconsistent for the Commission to have attempted collection from Slater if Clemson had a retail license.

For these reasons, the order of the trial court is

Affirmed.

GARDNER and BELL, JJ., concur.