24217

PALMETTONET, INC., Respondent/Appellant v. The SOUTH CAROLINA TAX COMMISSION, Appellant/Respondent. MCI TELECOMMUNICATIONS, INC., Respondent/Appellant v. The SOUTH CAROLINA TAX COMMISSION, Appellant/Respondent.

(456 S.E. (2d) 385)

Supreme Court

*Chief Deputy Atty. Gen Ray N. Stevens* and *Deputy Atty.*

*Gen. Ronald W. Urban, South Carolina Tax Com'n,* Columbia, *for appellant-respondent.*

*Mitchell Willoughby, B. Craig Collins* and *Alvis J. Bynum, Jr., Willoughby, Hoefer & Simmons, William J. Quirk,* and *Joseph D. Walker, McNair & Sanford,* Columbia, *for respondents-appellants.*

Heard Feb. 9, 1995.

Decided Mar. 27, 1995.

WALLER, Justice:

The South Carolina Tax Commission (Tax Commission)[1] appeals an Order holding that the fiber optic telecommunications systems operated by MCI and PalmettoNet (Taxpayer)[2] are not subject to sales tax. We affirm and hold that Taxpayer is entitled to interest on its judgment as set forth in S.C. Code Ann. § 12-47-60 (Supp. 1993).

## FACTS

Taxpayer operates a telecommunications system which carries long-distance telephone calls between local networks, called Local Access and Transport Areas (LATAs), in the state. Taxpayer does not conduct business with private telephone users. Rather, it contracts with carrier companies (carriers) who, using Taxpayer's capacity and facilities, provide long-distance service to individuals. The carriers pay a specified amount per month for use of Taxpayer's services, regardless of the number of transmissions carried.

The circuit court, without a jury, determined that Taxpayer was providing wholesale services which are not subject to sales tax. The court ordered the Tax Commission to refund all taxes paid under protest.[3] Tax Commission appeals.[4]

Taxpayer filed a Rule 59 motion, asking the court to determine the appropriate rate of interest on the refund. The court denied the Rule 59 motion, and Taxpayer appeals.

---

[1] Now known as the South Carolina Department of Revenue and Taxation.

[2] Pursuant to an assignment between PalmettoNet and MCI, MCI has the right to pursue PalmettoNet's refund.

[3] The total amount is $1,191,803.51.

[4] This appeal consolidates twenty actions for taxes paid under protest and one refund action.

## ISSUES

1. Do Taxpayer's transactions constitute sales or leases?

2. Do Taxpayer's transactions constitute wholesale or retail sales?

3. What rate of interest applies to Taxpayer's judgment?

## DISCUSSION

### 1. *Sale v. Lease*

An action for the recovery of taxes is an action at law. *Carolina Power & Light Co. v. Darlington County*, 315 S.C. 5, 431 S.E. (2d) 580 (1983). In an action at law tried without a jury, the trial court's findings will be upheld if they ar supported by any reasonable evidence. *Id.*

First, Tax Commission contends that Taxpayer leases tangible personal property to the carriers and is subject to sales tax pursuant to S.C. Code Ann. § 12-36-70 (Supp. 1993). Section 12-36-70 provides that a retailer includes every person "renting, **leasing**, or otherwise furnishing tangible personal property for a consideration." In support of its argument, Tax Commission cites language in the agreement between Taxpayer and the carriers which refers to leases and lease schedules.

We do not find the contract between the Taxpayer and the carriers controlling. When read in its entirety, the main thrust of the agreement is that Taxpayer will not sell telecommunication services directly to individual customers. The selected language cited by the Tax Commission does not establish the existence of a lease.

Moreover, the circuit court's finding that the transactions between Taxpayer and carrier constituted a sale of services is supported by the following evidence of record:

1. Taxpayer owns the telecommunications system;
2. Taxpayer controls, operates and maintains the system;
3. Taxpayer has possession of and title to the system;
4. Taxpayer selects and provides all of the equipment;
5. Taxpayer pays all taxes and insurance on the system and bears the risk of loss for damage;
6. Taxpayer is responsible for making all repairs to the system;

7. Taxpayer provides the electricity necessary to operate the system;

8. Taxpayer has the right to substitute wiring in the system;

9. Taxpayer has the right to provide service to competing long distance companies; and

10. The price that carriers pay for Taxpayer's services exceeds the rental value of the individual components of the system.

*See Comptroller of the Treasury v. Chesapeake & Potomac Telephone Co.*, 241 Md. 345, 216 A. (2d) 717 (1966).

### 2. *Wholesale v. Retail*

Tax Commission contends that Taxpayer's sales are retail rather than wholesale since its capacity and facilities are being used and consumed by the carriers in servicing their customers rather than being resold. We disagree.

Wholesale sales are not subject to sales tax. S.C. Code Ann. § 12-36-120 (Supp. 1993), defines "wholesale" as follows:

"Wholesale sale" and "sale at wholesale" mean a sale of:

(1) tangible personal property to licensed retail merchants, jobbers, dealers, or wholesalers for resale, and do not include sales to users or consumers not for resale;

(2) tangible personal property to a manufacturer or compounder as an ingredient or component part of the tangible personal property or products manufactured or compounded for sale;

(3) tangible personal property used directly in manufacturing, compounding, or processing tangible personal property into products for sale;

(4) materials, containers, cores, labels, sacks, or bags used incident to the sale and delivery of tangible personal property, or used by manufacturers, processors, and compounders in shipping tangible personal property.

To determine if a transaction is wholesale or retail, the threshold consideration is whether the buyer purchased for resale or for its own use. *Slatter Corp. v. S.C. Tax Commission*, 270 S.C. 405, 242 S.E. (2d) 439 (1978). In *Slater*, the Court held that the sale of food to colleges for resale in cafeterias was wholesale. The Court noted that: (1)

the students bought the food from the college, not Slater; (2) the college charged more per meal than it paid Slater for the food; (3) the students contracted with the college, not Slater; and (4) the college refunded students if necessary and determined who was entitled to purchase meals. *See also ARA Services v. S.C. Tax Commission*, 271 S.C. 146, 246 S.E. (2d) 171 (1978), *cert. denied*, 439 U.S. 1048, 99 S.Ct. 725, 58 L.Ed. (2d) 707 (sale of meals to charities was not wholesale since the meals were donated, not resold, to indigent children); *Stanton Quilting Co., Inc., v. S.C. Tax Comm.*, 281 S.C. 133, 314 S.E. (2d) 844 (Ct. App. 1984) (sale of quilts to churches for resale in fund-raising projects is a wholesale sale).

Here, as in *Slater, supra,* the purchaser (carrier), not the Taxpayer, contracts with the customer. The carrier purchases the telecommunication services from Taxpayer in bulk and then resells to the individual customer in smaller increments. The customer is charged more for the telecommunication service than what was paid by the carrier. Taxpayer has no contact with or responsibility to the customer. Accordingly, we find reasonable evidence supporting the trial court's finding that Taxpayer's sale of services to the carriers is wholesale and, therefore, exempt from sales tax.

We affirm the judgment rendered to Taxpayer for a tax refund.

### 3. *Rate of Interest*

Taxpayer contends that S.C. Code Ann. § 12-54-30 (Supp. 1993) controls the rate of interest due on its refund, while Tax Commission contends that S.C. Code Ann. § 12-47-60 (Supp. 1993) controls the rate of interest due.

Section 12-54-30 provides in pertinent part:

**Refund or credit in event of overpayment; interest on amount of credit or refund.**

**If the commission discovers on examination of a return or otherwise** that the tax, penalty, or interest paid by any person is in excess of the amount legally due, the commission may order a refund or give credit for the overpayment. Upon the allowance of a credit or refund of any tax, penalty, or interest paid, interest is allowed and paid on the amount of the credit or refund at the rate provided for in Section 12-54-20 from the date the tax,

penalty, or interest was paid to the date the order for refund or credit was issued. [Emphasis added.]

Section 12-54-20 provides an interest rate at the same set by the Internal Revenue Code (currently around 11%).

Section 12-47-60 provides:

**Interest on taxes and license fees administered by Department of Revenue and Taxation recovered through litigation.**

With respect to taxes and license fees administered by the South Carolina Department of Revenue and Taxation, whenever any amount of taxes, license fees, penalties, and interest are **recovered by successful litigation in the courts of this State,** such amounts recovered shall bear interest at the rate of one-half of one percent per month [6%] from the date such taxes, license fees, penalties and interest were paid to the date the order for refund or credit was issued, and such interest shall be paid in the same manner and receive the same preference as the amounts recovered. [Emphasis added.]

Taxpayer contends that § 12-47-60 was repealed by implication when § 12-54-30 was enacted.[5] Alternatively, Taxpayer contents that, if § 12-47-60 is upheld and applies only to those judgments recovered by successful litigation, it violates the Equal Protection and Due Process guarantees of the U.S. and S.C. Constitutions.

It is well settled that repeal by implication is not favored and will not be applied if there is any way to reasonably reconcile the statutes. *Stone v. State (City of Orangeburg),* 313 S.C. 533, 443 S.E. (2d) 544 (1994); *Mims v. Alston,* — S.C. —, 400 S.E. (2d) 357 (1994). However, when two statutes are in conflict, the more recent and specific statute should prevail so as to repeal the earlier general statute. *Stone supra.* Moreover, the fundamental rule of statutory construction is that the Court must apply the intent of the legislature. *Id.*

---

[5] Section 12-54-30 was enacted in 1985; § 12-47-60 was originally enacted in 1962, but was revised in 1993.

Based on the plain language of the statutes, § 12-47-60 (6% statute) applies to those judgments recovered against the Tax Commission upon litigation, while § 12-54-30 (higher interest rate) applies to those cases where the Commission discovers its own error. Therefore, the Tax Commission is penalizing itself when it makes the mistake of overcharging the Taxpayer by applying a higher interest rate. However, if the Tax Commission believes it has a valid claim, even though litigation proves otherwise, then it should not be penalized for asserting the claim. We disagree with Taxpayer's contention that this interpretation would result in the Tax Commission forcing Taxpayers to litigate every claim just so Tax Commission could pay a lower interest rate. Given the cost and time of litigation, we do not find this argument persuasive.

Taxpayer, also points to the language of § 12-54-30 as indicia that the legislature intended to repeal § 12-47-60. First, Taxpayer argues that the word "otherwise" in § 12-54-30 indicates that the legislature intended that the higher interest rate apply in all cases of refund. We disagree. The clear wording of the statute provides for the higher interest rate when the Commission discovers the error. *See Miller v. Doe*, 441 S.E. (2d) 319 (1994) (words of a statute will be given their plain and ordinary meaning).

Taxpayer also argues that the title of Chapter 54, "Uniform Method of Collection and Enforcement of Taxes Levied and Assessed by South Carolina Tax Commission," indicates that the Legislature intended that Chapter 54 be the single comprehensive chapter on tax collection. We disagree. First, as pointed out by the Tax Commission, Chapter 54 does not cover the entire subject matter of taxation since there are certain subjects addressed only in Chapter 47. Moreover, had the Legislature intended that Chapter 54 be the sole authority on tax collection, they could have so provided and explicitly repealed Chapter 47.[6]

Further, Taxpayer contents that § 12-54-190[7] evidences a

---

[6] We note that various statute in Chapter 47 have been repealed as has Chapter 55, "Tax Collection by State Budget and Control Board."

[7] § 12-54-190 Precedence of this Chapter over other statutes.

unless otherwise specified, the provisions of this chapter take precedence over all other related statutory provisions.

legislature intent to repeal § 12-47-60. We disagree. The language of the statute clearly applies only to those provisions controlling the interest rate **when the Tax Commission discovers the error** as set forth in § 12-54-30. Also, as noted above, had the legislature intended to specifically repeal Chapter 47, they would have specifically done so. Finally, Taxpayer contends that, should the Court reconcile the two statutes, its Equal Protection and Due Process guarantees are violated. We disagree.

As discussed above, the Tax Commission uses a higher interest rate when it discovers the error so that it is, in essence, punishing itself. However, if it is, in essence, punishing itself. However, if it litigates what it considers a bona fide dispute, it should not be penalized for maintaining the claim. Also, the lower interest rate for judgments recovered through litigation is justified by the fact that the time period for litigation is much longer than the time for administrative review. Thus, there is a rational basis for the two different interest rates. Equal protection and due process are not violated. *See Multi-Cinema, Ltd. v. S. C. Tax Commission,* 300 S.C. 514, 389 S.E. (2d) 153 (1989) (6% interest for tax refunds, rather than statutory post-judgment interest of 14%, *upheld*); *Foster v. Dept. Hwys. & Pub. Transp.,* 306 S.C. 519, 413 S.E. (2d) 31 (1992) (fact that classification may result in some inequity does not render it unconstitutional).

Accordingly, we hold that the rate of interest due on Taxpayer's refund is set forth in S.C. Code Ann § 12-47-60.

Affirmed.

FINNEY, C.J., MOORE, J., and A. LEE CHANDLER and GEORGE T. GREGORY, JR., Acting Associate Justices, concur.