777 S.E.2d 842

**Eugenia BOGGERO, d/b/a Boggero's Portable Toilets, Appellant,**

**v.**

**SOUTH CAROLINA DEPARTMENT OF REVENUE, Respondent.**

**Appellate Case No. 2014–000214.**

**No. 5356.**

Court of Appeals of South Carolina.

Heard May 12, 2015.

Decided Sept. 30, 2015.

---

278

Burnet Rhett Maybank, III, of Nexsen Pruet, LLC, of Columbia; and Roy R. Hemphill and Hannah Khristin Metts, both of McDonald Patrick Poston Hemphill & Roper, LLC, of Greenwood, for appellant.

Carol I. McMahan, of Anderson; and Milton Gary Kimpson, Ann Marie Thompson, and Harry T. Cooper, Jr., all of Columbia, for respondent.

LOCKEMY, J.

Eugenia Boggero, d/b/a Boggero's Portable Toilets, appeals the Administrative Law Court's order, finding the gross proceeds from her portable toilet business were subject to the South Carolina sales and use tax. Boggero argues the ALC erred in applying the tax because the "true object" of her business is a service. We affirm.

## FACTS

Boggero owns and operates Boggero's Portable Toilets in Greenwood as a sole proprietor. It is a family business, started by her father, which Boggero acquired in 2005. Boggero has never applied for a retail sales tax license, collected sales or use tax from customers, or paid sales or use tax to Respondent South Carolina Department of Revenue (the Department).

The Department audited Boggero for sales and use tax for the tax period January 1, 2009, through December 31, 2011 (the audit period). As a result of this audit, the Department imposed sales taxes on the "gross proceeds" from Boggero's portable toilet business in the amount of $8,891.96, plus interest of $602.27, and penalties of $3,191.36. In response to Boggero's protest of the notice, the Department issued a determination, affirming the imposition of the tax. Boggero then requested a contested case hearing before the ALC.

At the hearing, Boggero argued the "true object" of her business was a service—the removal and disposal of human waste—and, therefore, it was not subject to the state sales and use tax.[1] The ALC affirmed the Department's decision, finding the true object sought by the customer was the use of the portable toilets and other tangible personal property. This appeal followed.

## LAW/ANALYSIS

Boggero argues the ALC erred in finding the gross proceeds of her business were subject to sales and use tax because the true object of her business is a service—the removal and disposal of human waste. We disagree.

 "Tax appeals to the ALC are subject to the Administrative Procedures Act (APA)." *Centex Int'l, Inc. v. S.C. Dep't of Revenue,* 406 S.C. 132, 139, 750 S.E.2d 65, 68 (2013) (internal quotation marks omitted). "The decision of the [ALC] should not be overturned unless it is unsupported by substantial evidence or controlled by some error of law." *Id.* (internal quotation marks omitted).

"Certain situations involve a mixed question of law and fact." *Hopper v. Terry Hunt Constr.,* 373 S.C. 475, 479, 646 S.E.2d 162, 165 (Ct.App.2007), *aff'd by* 383 S.C. 310, 680 S.E.2d 1 (2009). For example, "[s]tatutory interpretation is a question of law." *Id.* "But whether the facts of a case were correctly applied to a statute is a question of fact, subject to the substantial evidence standard." *Id.* Likewise, "whether an agency correctly applied the facts of a case to a statute is a question of fact." *Id.* at 483, 646 S.E.2d at 167; *see also Bursey v. S.C. Dep't of Health & Envtl. Control,* 369 S.C. 176, 184–85, 631 S.E.2d 899, 904 (2006), *overruled on other grounds by Allison v. W.L. Gore & Assocs.,* 394 S.C. 185, 188, 714 S.E.2d 547, 549 (2011) (recognizing the meaning of a statutory term is a question of law, but whether a gas and electric company's activities met this definition is a question of fact); *Dreher v. S.C. Dep't of Health & Envtl. Control,* 412 S.C. 244,

---

1. Generally, the gross proceeds from services are not subject to sales and use tax. *See* S.C.Code Ann. Regs. § 117-308 (2012) ("The receipts from services, when the services are the true object of the transaction, are not subject to the sales and use tax unless ... [certain inapplicable exceptions apply].").

251, 772 S.E.2d 505, 509 (2015) (stating whether a tract of land was "on and within" Folly Island, as defined under a regulation, was a question of fact).

In *Bursey,* the South Carolina Electric and Gas Company (SCE & G) planned to build a back-up dam on Lake Murray and contacted the Department of Health and Environmental Control (DHEC) to determine whether it was required to obtain a mine operating permit. 369 S.C. at 179, 631 S.E.2d at 901. DHEC informed SCE & G no permit was necessary because the planned excavation did not fall within the definition of "mining" under the South Carolina Mining Act.[2] *Id.* In response to DHEC's determination, a resident filed an appeal with the Mining Council. *Id.* The Mining Council found SCE & G was required to obtain a mine operating permit because its planned activities constituted "mining" and did not fall within a statutory exception for "on-site" excavation.[3] *Id.* Both the circuit court and this court affirmed, finding substantial evidence supported the Mining Council's decision that SCE & G's project required a permit. *Id.* at 184, 631 S.E.2d at 904.

On appeal to our supreme court, SCE & G argued our court erroneously applied the substantial evidence standard of review to a legal determination—whether SCE & G's project fell within an exception to the permitting requirements—rather than examining this determination for an error of law. *Id.* at 183, 631 S.E.2d at 903. Our supreme court disagreed, stating:

The question of whether SCE & G's activities on the project meet the exception to the permitting requirements carved out by the statute is a mixed question of fact and law. There is a question of law in determining the meaning of the term excavation in the exception. There is also a question of fact in determining whether SCE & G's activities in association with the project exceed the scope of the definition of excavation in the exception.

---

2. S.C.Code Ann. § 48–20–10 (2008) *et. seq.*

3. *See* S.C.Code Ann. § 48–20–40(1) (2008) ("Mining does not include excavation or grading when conducted solely in aid of on-site farming or of on-site construction.").

369 S.C. at 184–85, 631 S.E.2d at 904 (citations and internal quotation marks omitted). Thus, the supreme court determined "the issue of whether SCE & G's activity is excavation" was subject to the substantial evidence standard of review. *Id.* at 185, 631 S.E.2d at 904. Because substantial evidence supported the Mining Council's decision that SCE & G's activities "constituted mining and did not fall within the statutory exception [for excavation,]" the supreme court affirmed. *Id.* at 186, 631 S.E.2d at 905 (citing *Dunton v. S.C. Bd. of Exam'rs in Optometry*, 291 S.C. 221, 223, 353 S.E.2d 132, 133 (1987) ("The construction of a statute by the agency charged with its administration will be accorded the most respectful consideration and will not be overruled absent compelling reasons.")).

■ Here, the Department of Revenue audited Boggero's transactions with her customers for the tax period January 1, 2009, through December 31, 2011, (the audit period) to determine whether the proceeds were "gross proceeds from the rental of portable toilets" and therefore subject to sales tax under subsection 12–36910(A) of the South Carolina Code (2014).[4] As a result of this audit, the Department imposed sales tax on the "gross proceeds" from Boggero's portable toilet business. In response to Boggero's protest of the notice, the Department issued a determination, affirming the imposition of the tax. Boggero then requested a contested case hearing before the ALC. The question before the ALC was whether Boggero's "gross proceeds from the rental and servicing of portable toilets [were] subject to sales tax." In answering this question in the affirmative, the ALC applied the "true object" test. The ALC determined "the true object of the transactions at issue is for the rental or lease of . . . the portable toilets and other personal property provided."

Boggero's sole issue on appeal is whether "[the ALC] erred in finding that the true object of [her] business was not a service and that [her] gross proceeds were therefore subject to the state sales and use tax." In other words, the gross proceeds of her business were not subject to sales tax because

---

4. *See id.* (imposing a sale tax on "the gross proceeds of sales" "upon every person engaged or continuing within this State in the business of selling tangible personal property at retail.").

the true object of her business is a service—the removal and disposal of human waste. To answer this question, we must first determine the proper standard of review from the ALC's decision.

Initially, we believe the dispute in this appeal is not primarily a question of statutory interpretation. *Cf. CFRE, LLC v. Greenville Cnty. Assessor,* 395 S.C. 67, 74, 716 S.E.2d 877, 881 (2011) ("Questions of statutory interpretation are questions of law, which we are free to decide without any deference to the court below."). The parties agree that if the transactions at issue are a rental or lease of "tangible personal property," the sales tax applies. *See* § 12–36–910(A) ("A sales tax . . . of the gross proceeds of sales, is imposed upon every person . . . in the business of selling tangible personal property at retail."); S.C.Code Ann. § 12–36–90(1)(b)(ii) (2014) (defining "[g]ross proceeds of sales" as "the value proceeding or accruing from the sale, lease, or rental of tangible personal property"); S.C.Code Ann. § 12–36–100 (2014) (defining "[s]ale" as "any transfer . . . of tangible personal property for a consideration including . . . a rental, lease, or other form of agreement"). On the other hand, the parties agree that if the transactions are a service, the sales tax does not apply. *See* S.C.Code Ann. Regs. § 117–308 (2012) ("The receipts from services, when the services are the true object of the transaction, are not subject to the sales and use tax unless [inapplicable exceptions apply]").

There is no dispute between the parties over the *meaning* of any terms used in the applicable taxing statutes. *Cf. Sonoco Products Co. v. S.C. Dep't of Revenue,* 378 S.C. 385, 391, 662 S.E.2d 599, 602 (2008) (implicitly applying a de novo standard of review when "[t]he ultimate decision in this case is dependent upon the Court's determination of the term 'contiguous' within the meaning of [a statute]"). To the extent there is a question of statutory interpretation here, it most resembles the "mixed question of law and fact" present in *Bursey.* The source of contention in this appeal is whether Boggero's transactions with her customers during the audit period constitute a rental or service. Similar to *Bursey* where the Mining Council found SCE & G's activities "constituted mining and did not fall within the statutory exception [for excavation,]" the question before the ALC here was whether Bogge-

ro's activities were a rental or service as defined in the applicable statutes. *See Bursey,* 369 S.C. at 184–85, 631 S.E.2d at 904 (holding the question of "whether SCE & G's activities in association with the project exceed[ed] the scope of the definition of excavation in the [statutory] exception" was a question of fact). As such, we believe the issue presented is a question of fact, subject to the well-known substantial evidence standard of review.

The question of our standard of review here is complicated by the fact that there is no clear authority as to whether a determination under the true object test is a question of law or fact. At least two states have explicitly stated the issue of whether a transaction is a sale or rental of a good or a service is a question of fact. *See Comm'r of Revenue v. Houghton Mifflin Co.,* 396 Mass. 666, 487 N.E.2d 1388, 1390–91 (1986) (noting the Appellate Tax Board's finding that "the taxpayer's basic purpose in contracting for the purchase of the work of artists and cartographers was to obtain their creative services embodied in the finished product" was a finding of fact, subject to the substantial evidence standard of review); *Fin. Computer Servs., Inc. v. Lindley,* 70 Ohio St.2d 243, 436 N.E.2d 1025, 1026 (1982) (" '[W]hether a customer's true object is a service or property is a question of fact.' " (quoting *Servi–Clean Indus., Inc. v. Collins,* 50 Ohio St.2d 80, 362 N.E.2d 648, 652 (1977))). Other states, however, have declared this issue a question of law. *See, e.g., State ex rel. Clayburgh v. Am. W. Cmty. Promotions, Inc.,* 645 N.W.2d 196, 209 (N.D.2002) (stating the true object test is a question of law when "[t]he parties … have stipulated to the facts and do not dispute any of the factual findings of the administrative law judge"); *Questar Data Sys. v. Comm'r of Revenue,* 549 N.W.2d 925, 928 (Minn.1996) (examining the "essence of the transaction" between a taxpayer and its customers as a question of law); *MCI Airsignal, Inc. v. State Bd. of Equalization,* 1 Cal.App.4th 1527, 2 Cal.Rptr.2d 746, 748 (1991) (implying the application of the true object test was a question of law); *James v. TRES Computer Serv., Inc.,* 642 S.W.2d 347, 348 (Mo.1982) (same). While our appellate courts have not addressed this issue, our supreme court has deferred to the trial court's factual findings when deciding whether a particular transaction was subject to a statutorily-imposed tax. *See*

*PalmettoNet, Inc. v. S.C. Tax Comm'r,* 318 S.C. 102, 105, 456 S.E.2d 385, 387 (1995) (affirming the circuit court's finding that the transactions at issue were "a sale of services" and not a "lease" as defined under section 12–36–70 when the finding was "supported by the following evidence of record").

We also note that the analysis under the true object test focuses on factual questions; namely, whether the customer's purpose for entering the transaction was to procure a good or a service. *See* Clyde L. Ball, *What is a Sale for Sales Tax Purposes,* 9 Vand. L. Rev. 231 (1956) (explaining the true object test "is one of basic purpose of the buyer"). The parties agree this determination "must be evaluated on a transaction-by-transaction basis." Such a fact-intensive inquiry indicates a question of fact warranting the substantial evidence standard of review. Moreover, as Boggero asserted during oral argument before our court, this is a "difficult case." We agree the case is difficult and the ALC could have reasonably found that the true object of the transactions at issue was a service. The fact that reasonable minds could differ as to the nature of these transactions supports our holding that this appeal is one for substantial evidence review. *See Lark v. Bi–Lo, Inc.,* 276 S.C. 130, 135, 276 S.E.2d 304, 306 (1981) (defining "[s]ubstantial evidence" as "evidence which, considering the record as a whole, would allow reasonable minds to reach the conclusion that the administrative agency reached" (citation omitted)); *id.* at 136, 276 S.E.2d at 307 ("[A] judgment upon which reasonable men might differ will not be set aside."). Therefore, we find this appeal presents a question of fact subject to our substantial evidence standard of review.[5]

---

5. We further note with interest that, in their briefs, both parties appeared to agree the issue on appeal was subject to the substantial evidence standard of review. *Compare* Resp. Br. 13–14 ("[T]he ALC applied the 'true object' test based on the factual determinations laid out in its [f]indings of [f]act. The ALC's [f]actual [f]indings were based on the substantial evidence on the record as a whole and the ALC committed no error of law."); *with* App. Reply Br. 1 ("[The Department] has conceded that the imposition of the sales tax must be evaluated on a transaction-by-transaction basis and *is a factual determination.*" (emphasis added)). Upon query by this court at oral argument, however, *both* parties responded that the issue on appeal is a question of law.

■ Having found the issue presented is a question of fact, we next address whether substantial evidence supports the ALC's finding that the true object of the transactions at issue was "the rental or lease of ... the portable toilets and other personal property provided." Substantial evidence supports the ALC's decision for several reasons. First, Boggero's website, which was included in the record before the ALC and this court, is evidence she is in the business of renting portable toilets. Her website states that in 1969, her company "became the first portable toilet rental business in the area." It further declares that "[w]hen considering your restroom *rental* needs, please take into consideration our second-to-none service ... and our attention to detail and you'll agree that the most time efficient and cost productive *rental* for you will be from Boggero's Services[.]" (emphasis added). The terms of Boggero's "service agreement" with her customers also support the ALC's decision that the true object of the transactions was a rental. The agreement states the customer requests "delivery *and use of* portable toilet(s) ... from Boggero's" and agrees "service fees for the *use of* portable toilets ... may increase in the future." (emphasis added).

Perhaps most importantly, when examining the nature of many of the transactions, there is evidence the customer is paying for the use of Boggero's personal property for a limited amount of time—an arrangement essential to a lease or rental. For example, Boggero offers customers optional "special event" toilets for social gatherings such as weddings and festivals. The invoices for these special event transactions indicate Boggero charges between $100 and $150 as a "special event rate." Boggero testified these charges were for delivery and pickup of the toilets and were in addition to her service charges for removing the waste. Although Boggero testified she generally did not charge a delivery or pickup fee, a review of the invoices during the audit period indicates many of the transactions included these flat fees.

Invoice number 4822 states Boggero charged the Greenwood Commission of Public Works four pickup or delivery charges of $35 between February and March 2009. Invoice number 5112 dated May 11, 2009, indicates Boggero charged Joanna Festival $180 for two "Special event standard units" and $150 for one "Handicap Special Event" unit. Invoice

number 5218 dated May 13, 2009, is for customer Storm Services, LLC. Boggero charged Storm Services $150 for one "Special event handwash unit" and $120 for six "Extra Services." Invoice 5220 dated May 14, 2009, was for Relay for Life. This invoice indicates Boggero charged $100 for each standard special event toilet and $150 for one handicap-accessible unit. Invoice 5228 dated June 5, 2009, was for Episcopal Church of the Resurrection and states Boggero charged $150 for a "special event VIP unit." [6] These invoices are evidence the customer was paying for something other than, as Boggero claims, "the removal of human waste."

When asked why she charges a delivery or pickup fee for special event customers but not for her construction customers, Boggero replied, "A special event, they want it specifically delivered on a Friday, and they want it specifically picked up the following Monday." One inference from the evidence is the delivery and pickup fees were, in fact, disguised rental fees because the customer will only have possession of the toilet for a limited number of days, thus limiting the times the toilet can be serviced and reducing Boggero's expected profit. Whether these fees were rental fees was essentially a credibility determination for the ALC, which further supports our finding that the issue on appeal is a question of fact. Moreover, a reasonable inference from the fact Boggero charges $150 for her "Special event handwash unit" and "special event VIP unit" yet only $100 for a "special event standard unit" is that a portion of these "delivery" fees pay for extra amenities included depending on the model of toilet. While Boggero testified she charges more for special event toilets because they generally accrue more waste than her construction units which results in higher disposal costs, there was no evidence that the price difference between the types of special event toilets was due to extra service costs between the toilets. A reasonable inference from the higher costs depending on the type of special event toilet is that the customer is paying a premium for extra amenities provided with the toilet. Consequently,

---

**6.** These examples are just the tip of the iceberg. A review of Boggero's invoices from June 2009 through August 2009 indicates a substantial portion of her business was for special event toilets that included flat fees ranging from $100 and $150.

this is evidence the customer is interested in the use of the toilet, rather than the "removal of human waste."

Admittedly, there were transactions where the customer did not pay a delivery or pickup fee, and perhaps the true object of those transactions was a service. Nevertheless, this decision goes to the weight of the evidence, a province for the ALC rather than this court. *See* S.C.Code Ann. § 1–23–610(B) (Supp.2014) (stating this court "may not substitute its judgment for the judgment of the [ALC] as to the weight of the evidence on questions of fact."). After reviewing the record as a whole, there is substantial evidence supporting the ALC's order. Accordingly, the ALC's decision is

**AFFIRMED.**

McDONALD, J., concurs. SHORT, J., concurring in result only.