THOMAS, J.:
**584 Rent-A-Center East, Inc. and Rent Way, Inc. (collectively, Taxpayers) appeal the decision of the Administrative Law Court (ALC) finding the gross proceeds from Taxpayers' rental of tangible personal property included fees from the sale of "Optional Liability Waiver Provisions" (Waivers). On appeal, Taxpayers argue the ALC erred in (1) failing to apply the appropriate rules of statutory construction to the applicable taxing statutes; (2) finding the Waivers were taxable when no imposition statute imposes a tax on waivers; (3) relying on the measure of tax statute when no imposition statute was invoked; (4) finding the Waiver proceeds were part of Taxpayers' gross proceeds of sale; (5) failing to determine whether the intangible Waivers were subject to sales tax; and (6) finding the "Consumer Rental-Purchase Agreements" (Rental Agreements) and Waivers constituted a single agreement or transaction. We affirm.
**585 FACTS/PROCEDURAL HISTORY
Taxpayers operate retail stores in South Carolina from which customers can rent-to-own durable consumer goods such as televisions, computers, appliances, and furniture. A customer who rented goods from Taxpayers was required to enter into a Rental Agreement. Under the Rental Agreement, the customer chose a weekly, monthly, or semi-monthly rental term and made rental payments accordingly. A customer could acquire ownership of a rental item by making all term payments for a specified number of rental terms. The customer could also unilaterally terminate the Rental Agreement at any time by returning the rental property and paying any overdue fees. The Rental Agreement contained a "Risk of Loss and Damages" section which provided the customer was responsible for the fair market value of the rental property if it was lost, stolen, damaged, or destroyed.
Taxpayers also offered customers a Waiver. The Waiver gave the customer the option to pay an additional fee along with the rental term payment-weekly, monthly, or semi-monthly. If a customer chose to pay the Waiver fee, Taxpayers would waive the customer's liability for the value of the rental *219 property in the event of certain enumerated conditions: lightning, fire, smoke, windstorm, theft, or flood. The Waiver provided Taxpayers would waive the customer's liability only if the customer "paid all periodic rental payments including the liability waiver fee through the date of loss and ... complied with all other terms of [the] Rental Agreement ...." Either the customer or Taxpayers could terminate the Waiver at any time without notice; the termination became effective at the end of the rental term. The Waiver further stated it was "an additional part of the Rental Agreement."
The South Carolina Department of Revenue (the Department) audited Rent-A-Center East, Inc.'s sales tax returns for the period April 1, 2007 through October 31, 2010; the Department audited Rent Way, Inc. for the period April 1, 2007 through October 31, 2009.[1] The audits showed Taxpayers properly paid sales taxes on proceeds from the Rental Agreements. However, Taxpayers did not pay sales taxes on proceeds **586 from the Waivers. The Department determined Rent-A-Center East, Inc. owed $521,694.93 plus interest; Rent Way, Inc. owed $192,158.64 plus interest. Taxpayers submitted payment in the amount of $919,585.55 for all taxes and interest owed and timely requested a contested hearing before the ALC.
After a hearing, the ALC found the Rental Agreements and Waivers were "fundamentally interconnected" because the Waivers were described as "provisions" of the Rental Agreements, the Waivers could not be entered into independently of the Rental Agreements, and the Waiver fees were calculated based on the term payment of the Rental Agreements. The ALC went on to find the true object of the transaction was "to obtain the use of an item while minimizing the financial risk of its damage, loss, or destruction." The ALC concluded the Waivers were subject to sales tax and ordered Taxpayers to remit payment of $851,622.31 plus accrued interest to the Department.[2] This appeal followed.
STANDARD OF REVIEW
This court's standard of review is set forth in section 1-23-610(B) of the South Carolina Code (Supp. 2018), which provides:
The review of the [ALC]'s order must be confined to the record. The court may not substitute its judgment for the judgment of the [ALC] as to the weight of the evidence on questions of fact. The court ... may affirm the decision or remand the case for further proceedings; or, it may reverse or modify the decision if the substantive rights of the petitioner have been prejudiced because the finding, conclusion, or decision is:
(a) in violation of constitutional or statutory provisions;
(b) in excess of the statutory authority of the agency;
(c) made upon unlawful procedure;
(c) affected by other error of law;
(d) clearly erroneous in view of the reliable, probative, and substantial evidence on the whole record; or **587 (f) arbitrary or capricious or characterized by abuse of discretion or clearly unwarranted exercise of discretion.
APPLICATION OF TAXING STATUTES
Taxpayers argue the ALC failed to apply the appropriate rules of statutory construction to the tax statutes at issue. Taxpayers assert the ALC failed to apply the plain meaning rule because it failed to identify an imposition statute that imposes a tax on the Waivers and instead looked to the "gross proceeds" language in the measure of tax statute. We disagree.
"Questions of statutory interpretation are questions of law, which [the appellate c]ourt is free to decide without any deference to the [ALC]." Duke Energy Corp. v. S.C. Dep't of Revenue , 415 S.C. 351, 355, 782 S.E.2d 590, 592 (2016). "The language of a tax statute must be given its plain and ordinary meaning in the absence of an ambiguity therein." Id. "Under the plain meaning rule, it is not the court's place to change the *220 meaning of a clear and unambiguous statute." Hodges v. Rainey , 341 S.C. 79, 85, 533 S.E.2d 578, 581 (2000). "Where the statute's language is plain and unambiguous, and conveys a clear and definite meaning, the rules of statutory interpretation are not needed and the court has no right to impose another meaning." Id.
"[A]ny substantial doubt in the application of a tax statute must be resolved in favor of the taxpayer." Alltel Commc'ns, Inc. v. S.C. Dep't of Revenue , 399 S.C. 313, 318, 731 S.E.2d 869, 872 (2012) ; see also Cooper River Bridge, Inc. v. S.C. Tax Comm'n , 182 S.C. 72, 76, 188 S.E. 508, 509-510 (1936) ("[W]here the language relied upon to bring a particular person within a tax law is ambiguous or is reasonably susceptible of an interpretation that will exclude such person, then the person will be excluded, any substantial doubt being resolved in his favor."). "The construction of a statute by the agency charged with its administration will be accorded the most respectful consideration and will not be overruled absent compelling reasons." Dunton v. S.C. Bd. of Exam'rs in Optometry , 291 S.C. 221, 223, 353 S.E.2d 132, 133 (1987).
"A sales tax, equal to five percent of the gross proceeds of sales, is imposed upon every person engaged or continuing **588 within this [s]tate in the business of selling tangible personal property at retail." S.C. Code Ann. § 12-36-910(A) (Supp. 2018).
"Tangible personal property" means personal property which may be seen, weighed, measured, felt, touched, or which is in any other manner perceptible to the senses. It also includes services and intangibles, including communications, laundry and related services, furnishing of accommodations and sales of electricity, the sale or use of which is subject to tax under this chapter and does not include stocks, notes, bonds, mortgages, or other evidences of debt.
S.C. Code Ann. § 12-36-60 (Supp. 2018).
"Gross proceeds of sales, or any similar term, means the value proceeding or accruing from the sale, lease, or rental of tangible personal property." S.C. Code Ann. § 12-36-90 (Supp. 2018). Gross proceeds of sales includes proceeds from the sale of tangible personal property without deduction for certain costs, taxes, interest paid, and losses. Id.
We find the ALC did not err as a matter of law in its interpretation and application of sections 12-36-910(A) and 12-36-90. See Duke Energy , 415 S.C. at 355, 782 S.E.2d at 592 ("Questions of statutory interpretation are questions of law, which [the appellate c]ourt is free to decide without any deference to the [ALC]."). Looking to the plain and ordinary meaning of the language in section 12-36-910(A), we believe the statute imposes a tax on all persons engaged in the business of selling tangible personal property at retail. Id. ("The language of a tax statute must be given its plain and ordinary meaning in the absence of an ambiguity therein."); Hodges , 341 S.C. at 85, 533 S.E.2d at 581 ("Under the plain meaning rule, it is not the court's place to change the meaning of a clear and unambiguous statute."). This court has previously stated the section levies a sales tax on persons; thus, we find Taxpayers' argument that the section applies instead to transactions and certain enumerated services unpersuasive. See Meyers Arnold, Inc. v. S.C. Tax Comm'n , 285 S.C. 303, 307, 328 S.E.2d 920, 923 (Ct. App. 1985) ("The sales tax is imposed under [s]ection [12-36-910][3] as a tax levied on per sons **589 engaged in selling tangible personal property at retail with the tax being a percentage of the gross proceeds of sales of the business." (emphasis added) ). The Department also adopts this interpretation of section 12-36-910(A) and has previously applied the statute to impose sales taxes on the sale of collision damage waivers on car rentals and maintenance contracts. See Dunton , 291 S.C. at 223, 353 S.E.2d at 133 ("The construction of a statute by the agency charged with its administration will be accorded the most respectful consideration and will not be overruled absent compelling reasons."). Section 12-36-910(A) therefore applies *221 to Taxpayers, and the ALC did not err in its application of the plain meaning rule.
Taxpayers next argue the ALC erred in failing to construe section 12-36-910(A) in their favor and against the imposition of a sales tax. However, because the statute is unambiguous, the ALC was in no position to apply rules of statutory interpretation. See Hodges , 341 S.C. at 85, 533 S.E.2d at 581 ("Where the statute's language is plain and unambiguous, and conveys a clear and definite meaning, the rules of statutory interpretation are not needed and the court has no right to impose another meaning."). Thus, there was no ambiguity in the statute to construe in Taxpayers' favor. See Cooper River Bridge , 182 S.C. at 76, 188 S.E. at 509-510 ("[W]here the language relied upon to bring a particular person within a tax law is ambiguous or is reasonably susceptible of an interpretation that will exclude such person, then the person will be excluded, any substantial doubt being resolved in his favor.").
Taxpayers further argue the ALC erred in relying on section 12-36-90, the measure of tax statute, because no imposition statute imposes a sales tax on the Waivers. As the parties agree, sections 12-36-910(A) and 12-36-90 must be read sequentially. Section 12-36-910(A) imposes a sales tax of five percent on the "gross proceeds" of all persons engaged in the business of selling tangible personal property at retail. Section 12-36-90 then defines "gross proceeds" as "the value proceeding or accruing from" the sale or lease of tangible personal property. Because we find Taxpayers' argument that section 12-36-910(A) imposes a sales tax on certain enumerated transaction types rather than persons unavailing, we also find the ALC did not err in reaching section 12-36-90 in determining whether the proceeds from Taxpayers' sale of Waivers constituted **590 "gross proceeds" within the scope of section 12-36-910(A).
THE TRUE OBJECT TEST
Taxpayers argue the ALC erred in determining the Rental Agreement and Waiver constituted a single agreement under the true object test. We disagree.
In Boggero v. S.C. Dep't of Revenue , this court considered whether the gross proceeds of a business were taxable as the rental of portable toilets or non-taxable as the service of waste removal. 414 S.C. 277, 280-88, 777 S.E.2d 842, 842-47 (Ct. App. 2015). This court found the appeal of the ALC's application of the true object test was a mixed question of law and fact and therefore limited its analysis to whether substantial evidence supported the ALC's determination that the true object of the taxpayer's business was the rental of portable toilets. Id. at 284-86, 777 S.E.2d at 845-46. We similarly limit our review of the ALC's finding that the Waivers and Rental Agreements were "fundamentally interconnected" as a bundled transaction to the substantial evidence standard set forth in section 1-23-610(B).
"[T]he true object test focuses on factual questions; namely, whether the customer's purpose for entering the transaction was to procure a good or a service." Boggero , 414 S.C. at 285, 777 S.E.2d at 846. "According to the 'true object test[,'] sales which are merely incidental to the transaction and not its true object are not exempt from the retail sales tax." Fraternal Order of Police v. S.C. Dep't of Revenue , 332 S.C. 496, 501 n.2, 506 S.E.2d 495, 497 n.2 (1998).
In Rent-A-Center East, Inc. v. Lincoln Parish Sales & Use Tax Comm'n , a Louisiana appellate court addressed an identical issue to the case at bar. 60 So.3d 95, 96-99 (La. App. 2 Cir. 3/9/11). The pertinent language in the Louisiana sales tax statutes imposed a two percent tax on "the gross proceeds derived from the lease or rental of tangible personal property." Id. at 98 (quoting LSA-R.S. 47:302 ). The Louisiana appellate court applied the "real object" test and found the proceeds from the sale of waivers were subject to sales tax because the waivers were merely incidental to the lease of tangible personal property. Id. at 98-99.
**591 Louisiana appellate courts have also addressed the analogous issue of whether liability damage waivers sold in connection with the rental of motor vehicles were sales taxable. Enter. Leasing Co. of New Orleans v. Curtis , 977 So.2d 975, 976-81 (La. App. 1 Cir. 11/2/07). Therein, the taxpayer was in the business of renting motor vehicles and offered an optional damage waiver which reduced *222 a customer's liability for certain incidents. Id. at 976-78. On appeal, the taxpayer argued the waivers were not subject to sales tax because they were optional and separately stated on the face of the rental contract. Id. at 979. The Louisiana court applied the "real object" test and determined the "real object of the transaction [was] the lease of tangible personal property, a motor vehicle." Id. at 979-80. The court concluded the waivers were sales taxable because they were incidental to the rental contracts for the motor vehicles. Id. at 980-81.
We find these decisions instructive. Similar to the Louisiana statute imposing a sales tax on gross proceeds derived from sales or rentals, section 12-36-910(A) imposes a sales tax on "gross proceeds of sales" of tangible personal property. Moreover, both the "real object" test and our "true object" test focus on the customer's intent for entering a transaction with elements of both goods and services. See Boggero , 414 S.C. at 285, 777 S.E.2d at 846 ("[T]he true object test focuses on factual questions; namely, whether the customer's purpose for entering the transaction was to procure a good or a service.").
The evidence before the ALC showed the fee for the Waiver and the fee for the Rental Agreement were paid together during each rental term. The Waiver could only be enforced if all payments under the Rental Agreement were made. The Rental Agreement contained a line item for the Waiver fee. The Waiver fee was calculated as a fixed percentage of the term payment under the Rental Agreement. Customers could not purchase a Waiver without first entering a Rental Agreement, and Taxpayers did not offer Waivers for items sold by third parties. The Waiver also specifically stated it was "an additional part of the Rental Agreement"; although Taxpayers argued this language was included in the Waiver solely to reduce their liability under consumer protection laws, they failed to point to any specific law or policy of any state mandating the inclusion of such language. Therefore, substantial **592 evidence in the record supported the finding that the sale of the Waiver was merely incidental to the Rental Agreement under the true object test. See Fraternal Order of Police , 332 S.C. at 501 n.2, 506 S.E.2d at 497 n.2 ("According to the 'true object test[,'] sales which are merely incidental to the transaction and not its true object are not exempt from the retail sales tax.").
We acknowledge evidence could also support a finding that the Waivers were separate and distinct from the Rental Agreements. The Waivers were optional and could be cancelled at any time without cancelling a Rental Agreement. Taxpayers also separately listed the fee for the Rental Agreement and the fee for the Waiver on customers' receipts. Moreover, payment of the Waiver fee did not count toward the purchase of the rental property. Nonetheless, because this court "may not substitute its judgment for the judgment of the [ALC] as to the weight of the evidence on questions on fact" and our review of the ALC's application of the true object test is limited to substantial evidence under Boggero , we affirm the ALC on this issue. See § 1-23-610(B) (providing an appellate court may not substitute its judgment for that of the ALC as to the weight of evidence on questions of fact).
GROSS PROCEEDS
Taxpayers argue even if the ALC properly reached the measure of tax statute, it erred in finding the Waiver proceeds were gross proceeds of the sale of the Rental Agreements. We disagree.
In our view, because substantial evidence supports the ALC's finding that the Waivers were merely incidental to the Rental Agreements, the Waivers must also be subject to the sales tax as gross proceeds of the Rental Agreements. See § 12-36-910(A) ("A sales tax, equal to five percent of the gross proceeds of sales, is imposed upon every person engaged or continuing within this [s]tate in the business of selling tangible personal property at retail."); § 12-36-90 ("Gross proceeds of sales, or any similar term, means the value proceeding or accruing from the sale , lease, or rental of tangible personal property." (emphasis added) ). Put differently, because the Waivers and Rental Agreements were inextricably linked, the **593 value proceeding from the Rental Agreements included the value Taxpayers received from the Waivers, *223 and the Waivers are not exempt from the sales tax. See Fraternal Order of Police , 332 S.C. at 501 n.2, 506 S.E.2d at 497 n.2 ("According to the 'true object test[,'] sales which are merely incidental to the transaction and not its true object are not exempt from the retail sales tax."); see also Lincoln Parish , 60 So.3d at 96-99 (finding identical waivers were subject to a sales tax statute imposing a tax on "the gross proceeds derived from the lease or rental of tangible personal property" because the waivers were inextricably linked to the rental agreements).
The ALC also addressed the holdings of Travelscape, LLC v. S.C. Dep't of Revenue , 391 S.C. 89, 705 S.E.2d 28 (2011) and Meyers Arnold , 285 S.C. 303, 328 S.E.2d 920 to determine whether the Waivers were subject to a sales tax as the gross proceeds of the Rental Agreements. Taxpayers assert these cases are inapposite and the ALC erred in relying on them because each involved mandatory fees for services, whereas the Waivers were optional. The Department argues the cases are controlling. We address them in turn.
In Meyers Arnold , this court considered whether fees associated with both lay away sales and the sale of wrapping paper were sales taxable. 285 S.C. at 304-08, 328 S.E.2d at 921-23. With respect to the wrapping paper, this court concluded the fee was charged in connection with the quality of wrapping paper a customer chose and thus was not for a service. Id. at 304-06, 328 S.E.2d at 921-22. Due to a specific exemption in the tax code for wrapping paper, the transaction was not sales taxable. Id. at 306-07, 328 S.E.2d at 922-23. The Meyers Arnold court also considered whether fixed, nonrefundable fees charged in connection with lay away sales were taxable as gross proceeds. Id. at 307, 328 S.E.2d at 923. In considering whether the lay away fees were gross proceeds of the sale of the tangible items, the court looked to the previous iteration of section 12-36-90 and defined gross proceeds of sales as "the value proceeding or accruing from the sale of tangible personal property ... without any deduction for service cost." Id. The court then stated that the taxpayer would not earn the lay away fees "but for" the sales and concluded the fees were sales taxable. Id.
**594 In Travelscape , our supreme court considered a similar issue of service fees. 391 S.C. at 95-103, 705 S.E.2d at 31-35. The taxpayer charged a service fee in connection with the booking of hotel rooms. Id. at 95, 705 S.E.2d at 31. In determining whether the service fees were gross proceeds of the booking of hotel rooms, the supreme court specifically defined gross proceeds as the value obtained without deduction for the cost of services. Id. at 98, 705 S.E.2d at 33. The court then concluded the fees were subject to sales tax as a cost of service. Id.
The ALC considered the facts of these cases and relied on them in two respects. First, the ALC reasoned the holding in Travelscape and the lay away fees issue in Meyers Arnold show mandatory costs associated with the sale of tangible goods may be sales taxable. Second, the ALC considered the wrapping paper issue in Meyers Arnold and concluded that merely being optional does not prevent one part of a transaction from being subject to sales tax. While we agree with Taxpayers that these cases are not directly analogous to the instant appeal because they involve attempts to deduct service fees, we find no error in the ALC's consideration of them in its final order.
CONCLUSION
Accordingly, the decision of the ALC is
AFFIRMED.[4]
LOCKEMY, C.J., and GEATHERS, J., concur.

Rent Way, Inc. merged into Rent-A-Center East, Inc. on December 31, 2009.

The audit report originally included penalties, but they were later dropped and are not at issue.

Section 12-36-910 was previously codified as section 12-35-510 of the South Carolina Code (2014).

We decide this case without oral argument pursuant to Rule 215, SCACR.