# THE STATE OF SOUTH CAROLINA
## In The Court of Appeals

Lowe's Home Centers, LLC, Appellant,

v.

South Carolina Department of Revenue, Respondent.

Appellate Case No. 2021-000031

———————

Appeal From The Administrative Law Court
S. Phillip Lenski, Administrative Law Judge

———————

Opinion No. 6062
Heard November 7, 2023 – Filed June 12, 2024

———————

**AFFIRMED**

———————

James Peter Rourke and James F. Reames, III, both of
Maynard Nexsen, LLC, of Columbia; and Michael J.
McConnell and John M. Allan, both of Atlanta, Georgia,
all for Appellant.

Jason Phillip Luther and Wayne Allen Myrick, Jr., both
of the South Carolina Department of Revenue, of
Columbia, for Respondent.

———————

**MCDONALD, J.:** Lowe's Home Centers, LLC appeals the administrative law
court's order affirming the South Carolina Department of Revenue's (SCDOR)
final agency determination that Lowe's owes additional sales taxes and interest for
materials sold in conjunction with installation services contracts during the
specified audit period. The primary argument is that the ALC misinterpreted the

applicable statutes and regulatory authority in finding the retailer's real property improvement contracts involved taxable retail sales of tangible personal property; however, Lowe's further challenges the ALC's findings as to whether SCDOR erred in calculating the materials' fair market value or violated the Equal Protection Clause by treating Lowe's differently than it treated other similarly situated contractors. We affirm.

**Facts and Procedural History**

Lowe's is a national home improvement retail chain operating forty-nine stores in South Carolina. In addition to traditional retail sales of home improvement products, Lowe's offers home improvement installation services through third-party installers. For these installation contracts, Lowe's hires third-party installers to install materials purchased exclusively from Lowe's.

In a traditional retail sale, a customer selects items for purchase and pays the retail price and accompanying sales tax based upon the retail purchase price. In transactions involving an installation services contract, Lowe's employs a third-party installer to inspect the customer's home, take detailed measurements, and determine the labor costs and materials needed for the job. The installer reports this information to a Lowe's associate and may charge a detail fee for this service. Lowe's informs the customer of the proposed installation costs and materials estimates, and the customer finalizes the selection of materials. Lowe's and the customer then execute an agreement detailing the material and labor costs. The third-party installer does not receive the full amount the customer pays for labor, and Lowe's does not provide installation services unless the customer purchases the materials from Lowe's as part of the installation services transaction.

For an installation, Lowe's either withdraws the materials from its own stock or special orders them from a vendor. Whether the materials come from existing stock or by special order, Lowe's purchases them wholesale using its resale certificate and does not pay a sales tax. Customers can purchase these materials with or without installation services—a customer is charged the same retail price for the materials in either situation. However, for the audit period, Lowe's did not charge customers a sales tax on materials sold with installation services contracts. Rather, Lowe's remitted the sales taxes based on its withdrawal and use of materials from its own stock, and it calculated the sales tax based on the wholesale price Lowe's paid for the materials.

In 2011, SCDOR informed Lowe's that its sales tax returns for the August 1, 2008 through July 31, 2011 period had been selected for audit. Through this audit, SCDOR found that for transactions involving installation services, Lowe's had underpaid sales taxes by about forty-percent—the difference in taxes calculated on the wholesale price versus the retail price Lowe's charged customers for the materials. SCDOR then notified Lowe's it was required to pay a sales tax based on the fair market value of the materials —the retail price Lowe's charged customers—upon withdrawal of the materials from inventory.

Lowe's protested the proposed assessments. On October 24, 2014, SCDOR issued a final determination in which it assessed $2,206,054.28 in sales taxes, $360,580.69 in interest, and $290,0593.25 in negligence penalties. SCDOR determined the taxable retail sale occurred when Lowe's withdrew, used, or consumed the materials during the performance of the real property improvements, not when Lowe's acquired the materials at wholesale from vendors.

Lowe's timely requested a contested case hearing to challenge SCDOR's final determination. Lowe's asserted the sales taxes it paid were properly based on the fair market value of the materials in the hands of Lowe's as a contractor, i.e., the price for which Lowe's bought the materials at wholesale.

Following the contested case hearing, the ALC found the taxable retail transaction occurred when Lowe's sold the materials at retail price to the customer as the final consumer of the materials, thus rejecting SCDOR's position that the taxable retail sale occurred when Lowe's withdrew the materials from inventory. The ALC further found Lowe's initially acts as a retailer in selling the customer the materials and later acts as a contractor in overseeing their installation. It upheld SCDOR's assessment of $2,206,504.28 in sales taxes and $360,580.69 in interest, finding the materials should have been taxed at the retail price paid by the customer. The ALC declined to assess negligence penalties. Lowe's timely appealed.

**Standard of Review**

Section 1-23-610(B) of the South Carolina Code (Supp. 2023) provides our standard of review when we consider a decision of the ALC:

> The court of appeals may affirm the decision or remand the case for further proceedings; or, it may reverse or modify the decision if the substantive rights of the

> petitioner have been prejudiced because the finding,
> conclusion, or decision is:
>
> (a) in violation of constitutional or statutory provisions;
> (b) in excess of the statutory authority of the agency;
> (c) made upon unlawful procedure;
> (d) affected by other error of law;
> (e) clearly erroneous in view of the reliable, probative,
> and substantial evidence on the whole record; or
> (f) arbitrary or capricious or characterized by abuse of
> discretion or clearly unwarranted exercise of discretion.

"We review questions of statutory interpretation de novo." *Books-A-Million, Inc. v. S.C. Dep't of Revenue*, 437 S.C. 640, 642, 880 S.E.2d 476, 477 (2022). "Tax statutes are to be interpreted like any other statutes." *Id*.

**Analysis**

**I.  Sales Tax**

Lowe's argues the ALC erred in finding the installation services contracts involved retail sales and misinterpreted the pertinent statutory and regulatory language in upholding SCDOR's assessment of additional sales taxes. Lowe's asserts it operates as a contractor when using materials in connection with installation services contracts and the taxable sale of such materials occurs when Lowe's purchases the materials at wholesale. Lowe's contends it properly paid a sales tax only on the price it paid for the materials at wholesale, not the retail price the consumer paid for the materials used in an installation.

South Carolina imposes a sales tax on "the gross proceeds of sales" by those "engaged or continuing within this State in the business of selling tangible personal property[1] at retail." S.C. Code Ann. § 12-36-910(A) (2014). The Sales and Use Tax Act defines a "sale" as "any transfer, exchange, or barter, conditional or otherwise, of tangible personal property for a consideration." S.C. Code Ann. § 12-36-100 (2014). "Sale at retail and retail sale mean all sales of tangible personal property except those defined as wholesale sales. The quantity or sales

---

[1] "'Tangible personal property' means personal property which may be seen, weighed, measured, felt, touched, or which is in any other manner perceptible to the senses." S.C. Code Ann. § 12-36-60 (2014).

price of goods sold is immaterial in determining if a sale is at retail."  S.C. Code Ann. § 12-36-110 (2014).  Retail sales include:

> (a) sales of building materials to construction contractors, builders, or landowners for resale or use in the form of real estate;
>
> . . . .
>
> (c) the withdrawal, use, or consumption of tangible personal property by anyone who purchases it at wholesale, except:
>
>> (i) withdrawal of tangible personal property previously withdrawn and taxed by such business or person;
>
>  . . . .
>
> (e) sales to contractors for use in the performance of construction contracts. . . .

S.C. Code Ann. § 12-36-110(1) (2014).  The definitions of "wholesale sale" and "sale at wholesale" include sales of "tangible personal property to licensed retail merchants, jobbers, dealers, or wholesalers for resale, and do not include sales to users or consumers not for resale."  S.C. Code Ann. § 12-36-120(1) (2014).

A "retailer" or "seller" "includes every person . . . selling or auctioning tangible personal property whether owned by the person or others."  S.C. Code Ann. § 12-36-70(1)(a) (2014).  The following statutes defining "gross proceeds" are also relevant to our inquiry:

> Gross proceeds of sales, or any similar term, means the value proceeding or accruing from the sale, lease, or rental of tangible personal property.
>
> (1) The term includes:

(a) the proceeds from the sale of property sold on consignment by the taxpayer, including property sold through a marketplace by a marketplace facilitator;

(b) the proceeds from the sale of tangible personal property without any deduction for:

> (i) the cost of goods sold;
> (ii) the cost of materials, labor, or service;
> (iii) interest paid;
> (iv) losses;
> (v) transportation costs;
> (vi) manufacturers or importers excise taxes imposed by the United States; or
> (vii) any other expenses;

(c) the fair market value of tangible personal property previously purchased at wholesale which is withdrawn from the business or stock and used or consumed in connection with the business or used or consumed by any person withdrawing it, except for:

> (i) withdrawal of tangible personal property previously withdrawn and taxed by such business or person;
>
> (ii) tangible personal property which becomes an ingredient or component part of tangible personal property manufactured or compounded for sale;
>
> . . . .

S.C. Code Ann. § 12-36-90 (2014 & Supp. 2023).

It is presumed that all gross proceeds are subject to the tax until the contrary is established. The burden of proof that the sale of tangible personal property is not a sale at retail is on the seller.

However, if the seller receives a resale certificate signed by the purchaser stating that the property is purchased for resale, the liability for the sales tax shifts from the seller to the purchaser.

. . . .

S.C. Code Ann. § 12-36-950 (2014).

SCDOR regulations addressing the application of the sales and use tax to the transactions of some retailers, along with SCDOR regulations addressing sales of building materials to contractors for resale, must also be considered. Regulation 117-309, regarding the transactions of certain retailers, provides:

The following addresses the application of the sales and use tax to the transactions of some retailers. The list of retailers is not all inclusive and the types of transactions discussed for each retailer are not all inclusive. In addition to selling tangible personal property, some of these retailers may also provide services, some of which are sold in conjunction with tangible personal property and other [sic] which are not sold in conjunction with tangible personal property.

. . .

**117-309.17. Withdrawals From Stock, Merchants.**

To be included in gross proceeds of sales is the money value of property purchased at wholesale for resale purposes and subsequently withdrawn from stock for use or consumption by the purchaser.

The value to be placed upon such goods is the price at which these goods are offered for sale by the person withdrawing them. All cash or other customary discounts which he would allow to his customers may be deducted; however, in no event can the amount used as gross proceeds of sales be less than the amount paid for the goods by the person making the withdrawal.

S.C. Code Ann. Regs. 117-309 to -309.17 (2012).

> Sales of building materials to contractors, builders, or landowners for resale or use in the form of real estate are retail sales in whatever quantity sold.

**117-314.1.  Sales of Building Materials.**

> Sales of building materials for use in adding to, repairing or altering real property, are subject to the sales or use tax at the time of purchase even though the property erected therefrom may be subsequently leased or rented to the person who owns or controls the land on which the property is situate. . . .

**117-314.2.  Building Materials.**

> Building materials when purchased by builders, contractors, or landowners for use in adding to, repairing or altering real property are subject to either the sales or use tax at the time of purchase by such builder, contractor, or landowner. . . .

S.C. Code Ann. Regs. 117-314 to -314.2 (2012).

"The cardinal rule of statutory interpretation is to ascertain and effectuate the intention of the legislature."  *DIRECTV, Inc. & Subsidiaries v. S.C. Dep't of Revenue*, 421 S.C. 59, 70, 804 S.E.2d 633, 638 (Ct. App. 2017) (quoting *Sloan v. Hardee*, 371 S.C. 495, 498, 640 S.E.2d 457, 459 (2007)).  Courts "must give the words found in the statute their 'plain and ordinary meaning without resort to subtle or forced construction to limit or expand the statute's operation.'"  *CFRE, LLC v. Greenville Cnty. Assessor*, 395 S.C. 67, 74, 716 S.E.2d 877, 881 (2011) (quoting *Sloan*, 371 S.C. at 499, 640 S.E.2d at 459). "Thus if the words are unambiguous, we must apply their literal meaning."  *Id.*

> As a general rule, tax exemption statutes are strictly construed against the taxpayer.  This rule of strict construction simply means that constitutional and statutory language will not be strained or liberally

construed in the taxpayer's favor.  It does not mean that
we will search for an interpretation in [SCDOR's] favor
where the plain and unambiguous language leaves no
room for construction.  Only when the literal application
of a statute produces an absurd result will we consider a
different meaning.

*Se.-Kusan, Inc. v. S.C. Tax Comm'n*, 276 S.C. 487, 489–90, 280 S.E.2d 57, 58
(1981) (citations omitted)*; see also Home Med. Sys., Inc. v. S.C. Dep't of Revenue*,
382 S.C. 556, 564, 677 S.E.2d 582, 587 (2009) ("The language of a tax exemption
statute must be given its plain, ordinary meaning and must be strictly construed
against the claimed exemption.").

Lowe's asserts that no transfer of tangible personal property occurs in connection
with an installation services contract and that for purposes of such a contract,
Lowe's acts as a contractor—not a retailer—under South Carolina's dual business
regulation.  The dual business regulation, 117-324, provides:

> Operators of businesses who are both making retail sales
> and withdrawing for use from the same stock of goods
> are to purchase at wholesale all of the goods so sold or
> used and report both retail sales and withdrawals for use
> under the sales tax law.
>
> This ruling applies only to those who actually carry on a
> retail business having a substantial number of retail sales
> and does not apply to contractors, plumbers, repairmen,
> and others who make isolated or accommodation sales
> and who have not set themselves up as being engaged in
> selling.  Where only isolated sales are made, tax should
> be paid on all of the taxable property purchased with no
> sales tax return being required of the seller making such
> isolated or "accommodation" sales.

S.C. Code Ann. Regs. 117-324 (2012).  Regulation 117-324 requires such a retailer
"to report both retail sales and withdrawals for use under the sales tax law."
SCDOR admits there is no dispute as to Lowe's' compliance with the dual business
regulation because Lowe's properly reported its traditional retail sales and its
withdrawals from stock.  SCDOR asserts the true dispute in this case involves the
application of Regulation 117-309.17 and what determines "gross proceeds" when

a dual business withdraws materials from stock and uses or sells them with an installation contract to the final consumer.

Although we found no South Carolina appellate decision considering the specific question before us, cases addressing other tax contexts are helpful to our analysis. For example, in *Greystone Catering Co. v. South Carolina Department of Revenue & Taxation*, SCDOR assessed a retail sales tax on food and beverages offered as part of a package deal with a hotel room. 326 S.C. 551, 556, 486 S.E.2d 7, 9 (Ct. App. 1997). Greystone, which managed Embassy Suites, paid a seven percent accommodations tax on total room revenues, but SCDOR also imposed a five percent sales tax on the food and beverages associated with the room package advertising free breakfast and complimentary drinks. *Id.* Greystone argued paying the seven percent tax on the room rate in addition to the five percent tax on food and beverages resulted in double taxation on the same goods. *Id.* at 554, 486 S.E.2d at 9. Rejecting this argument, the court noted, "A finding that withdrawals from inventory are not taxable under these circumstances would be contrary to the legislature's intent." *Id.* at 556, 486 S.E.2d at 9. "If a charge for an item was stated separately, the guest would be the final consumer when the guest paid the bill. If not, the hotel would be the 'final consumer' when it withdrew the item from inventory." *Id.* at 554, 486 S.E.2d at 8; *cf. ARA Servs., Inc. v. S.C. Tax Comm'n*, 271 S.C. 146, 150, 246 S.E.2d 171, 172 (1978) (finding sale of meals to a college, which subsequently sold the meals to students, was "not the last transfer of the meals for consideration, and thus were wholesale transactions").

More recently, in *Boggero v. South Carolina Department of Revenue*, the court of appeals considered whether the gross proceeds of a portable toilets business were subject to sales and use tax. 414 S.C. 277, 279–80, 777 S.E.2d 842, 843 (Ct. App. 2015). The business owner argued the ALC erred in finding her gross proceeds were subject to the tax because the "true object" of the business was a service—removing human waste. *Id.* Finding the ALC's application of the true object test involved a mixed question of law and fact, this court limited its analysis to whether substantial evidence supported the ALC's determination that the true object of the business was the rental of portable toilets. *Id.* at 283–86, 777 S.E.2d at 845–46. The court stated, "[T]he true object test focuses on factual questions; namely, whether the customer's purpose for entering the transaction was to procure a good or a service." *Id*. at 285, 777 S.E.2d at 846. The court then found substantial evidence in the record supported the ALC's determination that the "true object" of the transactions was the rental or lease of portable toilets and other personal items, rather than a service, because the business's website stated it was in the business of renting portable toilets; the website mentioned rentals several times; the service

agreement listed service fees; and many of the transactions involved delivery and pickup fees for the use of the portable toilets. *Id.* at 287–88, 777 S.E.2d at 847. By statute, the burden is on Lowe's to establish that the sale of home improvement materials to a customer in connection with an installation services contract is not a retail sale. *See* § 12-39-950 ("It is presumed that all gross proceeds are subject to the tax until the contrary is established. The burden of proof that the sale of tangible personal property is not a sale at retail is on the seller."). As noted above, a retail sale includes "all sales of tangible personal property except those defined as wholesales" and a "sale" is "any transfer . . . of tangible personal property for a consideration." *See* S.C. Code Ann. §§ 12-36-100 and 12-36-110. For an installation sales contract, a customer purchases the necessary materials—tangible personal property—from Lowe's as a separate item delineated in the contract; evidence supports the ALC's finding that such a purchase involves a retail sale. For this reason, and because the sale of materials to the contracting customer is the last sale in the chain of transactions, the ALC did not err in upholding SCDOR's determination that the sale of the materials to be installed is a retail sale transaction subject to South Carolina's sales tax.

We are not persuaded by the argument that Lowe's owes a sales tax only on the wholesale price paid because it was required to purchase the materials at wholesale. To accept this argument would require a forced construction of the applicable statutes and regulatory provisions. Wholesales do not include sales to users or consumers who purchase for their own use, not for resale. *See* § 12-36-120(1) (expressly stating the terms "wholesale sale" and "sale at wholesale" "do not include sales to users or consumers not for resale"); *see also Stanton Quilting Co. v. S.C. Tax Comm'n*, 281 S.C. 133, 137, 314 S.E.2d 844, 846 (Ct. App. 1984) ("[T]he intent of the legislature was to exempt from sales tax sales to buyers who purchase for resale, not as consumers or for use themselves."). A Lowe's witness admitted that when purchasing materials at wholesale, Lowe's did not know which materials would be used in connection with installation services contracts and which would not. Further, as anticipated by § 12-36-950, Lowe's presented its resale certificate to vendors, certifying it was acquiring the materials to resell them to customers.

Additionally, although Lowe's contends the installation services contracts are lump sum contracts, the sample contract provided as an exhibit at the hearing shows separate itemized charges for materials and labor, and Lowe's only provides installation services if the customer purchases the materials from Lowe's. This evidence further supports the ALC's finding that the main purpose of the transaction is the sale of the materials, and the installation services are incidental to

that retail transaction. *See, e.g.*, *Rent-A-Ctr. E., Inc. v. S.C. Dep't of Revenue*, 425 S.C. 582, 591, 824 S.E.2d 217, 222 (Ct. App. 2019) (holding substantial evidence supported ALC's finding that waivers sold to customers were "merely incidental" to the rental agreements and, thus, the waivers were subject to sales tax as gross proceeds of the rental agreements).

Other evidence supporting the ALC's finding that Lowe's acts as a retailer for purposes of the installation services contracts is found in Lowe's' financial documentation, in which Lowe's advertises itself as a retailer. Ninety-four percent of Lowe's' sales are traditional retail sales that do not include installation services. Lowe's does not work for general contractors as a subcontractor, and it only provides installation services when customers purchase their materials from Lowe's. Although Lowe's did hold a contractor's license for a short time during the audit period, it did not have this license for most of the installed sales. And, an installation contract for a granite countertop purchase, admitted as a joint exhibit, contains this statement by Lowe's: "LOWES IS A SUPPLIER OF MATERIALS ONLY. LOWES DOES NOT ENGAGE IN THE PRACTICE OF ENGINEERING, ARCHITECTURE, OR GENERAL CONTRACTING." As the ALC explained in its findings of fact:

> Lowe's only provides installation services as an option accompanying a purchase from Lowe's. Imbedded within the overall cost of the installation contract is the regular retail price of the materials to be installed and those materials must be fully paid for prior to the commencement of the installation. Lowe's does not offer contracting services outside of those encapsulated in the installation contracts and the installation contracts at issue are not offered without the customer's simultaneous purchase of the home improvement items directly from Lowe's. In other words, Lowe's does not ever [provide] the option of unattached contracting services to its customers. Clearly, the overarching purpose of Petitioner's operations—including installation contract services —is to facilitate a retail sale to retail customers. Moreover, traditional retail sales that do not include installation services constitute the vast majority of the company's sales.

Lowe's relies on cases from other states to support its argument that it should owe a sales tax only on the wholesale price it paid. Initially, we note we are not bound by the decisions of other jurisdictions. *See Books-A-Million*, *Inc. v. S.C. Dep't of Revenue*, 430 S.C. 388, 396, 844 S.E.2d 399, 403 (Ct. App. 2020) (recognizing "this court does not have to follow other states' interpretations of their tax laws in interpreting our own tax laws."), *aff'd*, 437 S.C. at 640, 880 S.E.2d at 476. We find more persuasive SCDOR's showing that the language of the statutes considered in the cited cases differs from that of the South Carolina provisions applicable here.[2] And most significantly, we see no error of law in the ALC's analysis of the applicable South Carolina statutory and regulatory provisions. Accordingly, we affirm the ALC's order upholding SCDOR's determination that Lowe's owes the

---

[2] For example, Lowe's cites an unpublished Kansas opinion, *In re Lowe's Home Centers, L.L.C.*, but that case addressed whether a sales tax applies to installation charges and services in connection with the sale of appliances. *See* 394 P.3d 149 at 2 (Kan. Ct. App. 2017). In upholding the non-taxable determination and finding Lowe's acted as a contractor, the Court of Appeals of Kansas referenced a Kansas statute, Kan. Stat. Ann. 79-3603(p) (West Supp. 2016), expressly stating "no tax shall be imposed *upon the service* of installing or applying tangible personal property in connection with . . . the original construction, reconstruction, restoration, remodeling, renovation, repair or replacement of a residence." *Id.* at 21 (emphasis added). That is not the issue here. The issue here is whether the materials themselves, not labor costs, are subject to a sales tax.

The Indiana authority cited is likewise distinguishable. In *Lowe's Home Centers, LLC v. Indiana Department of State Revenue*, 23 N.E.3d 52, 55 (Ind. T.C. 2014), the tax court of Indiana granted summary judgment in favor of Lowe's, finding Lowe's was required to remit a use tax for construction materials used in connection with its installation services contracts. The tax court explained that in Indiana, "contractors that do not pay sales tax on their purchase of construction material must remit use tax on their cost of purchasing the material when they incorporate it into real property." *Id.* Notably, the tax court cited regulations specifically providing "[a] contractor may function as a retail merchant (having all duties and responsibility as such) with respect to construction material, and then function as an installer or 'converter' of such property which will be treated as having been furnished by the customer." *Id.* at 56 (quoting 45 Ind. Admin. Code 2-2-3-11(c) (2007)).

additional sales taxes (and interest) assessed upon the retail prices its customers paid for materials purchased with a Lowe's installation services contract.[3]

## II. Fair Market Value

The ALC found the materials at issue were subject to sales tax based upon the final taxable retail sale—the sale to the customer. As SCDOR explained in its briefing, the issues here turn on which step in the process of purchasing materials triggers a sales tax obligation for Lowe's. Three transactions are involved in this process: (1) when Lowe's buys materials at wholesale from a vendor; (2) when Lowe's withdraws materials for use in an installation project; and (3) when the Lowe's customer pays retail price for materials to be installed by a third-party contractor. Lowe's asserts the taxable transaction occurs when it purchases the materials at wholesale. SCDOR asserted at the contested case hearing that the taxable event occurs at step 2, when Lowe's withdraws the materials for use in the installation. The ALC found the taxable event occurs at step 3, when a customer pays retail price for the materials and contracts for the installation services.

Applying the sales tax at either step 2 or step 3 produces the same result: the tax is based on the fair market value of the materials (i.e., the retail price Lowe's charges the customer for the selected materials). Because we find the ALC properly assessed taxes based upon the final retail sale to the customer, we decline to further address whether SCDOR erred in calculating fair market value at step 2 upon the withdrawal of the materials from inventory. *See Futch v. McAllister Towing of Georgetown, Inc.*, 335 S.C. 598, 613, 518 S.E.2d 591, 598 (1999) (noting a reviewing court need not address remaining issues when disposition of a prior issue is dispositive).

---

[3] Like the ALC, we reject Lowe's' argument that under the terms of its contract, title to the materials purchased remains with Lowe's until after the materials have been installed in a customer's home. Before any installation, a customer selects the materials and purchases them at retail price. Whether the customer leaves the store with the items or has them installed later pursuant to their instructions in an installation contract does not alter the retail nature of the transaction. Similarly, it makes no difference to our analysis whether Lowe's pulls materials from existing stock or orders special materials for a customer's installation. In either case, it is a retail sale subject to the sales tax.

## III. Equal Protection

Finally, Lowe's argues SCDOR's assessment of the sales taxes and penalties violates the Equal Protection Clause because SCDOR treats Lowe's differently than it treats other similarly situated contractors. Lowe's further asserts the ALC erred in finding its equal protection argument was moot.

The South Carolina Constitution provides no "person shall be denied the equal protection of the laws." S.C. Const. art. I, § 3. Success on an equal protection claim requires "a showing that similarly situated persons received disparate treatment." *Richland Cnty. Sch. Dist. 2 v. Lucas*, 434 S.C. 299, 305, 862 S.E.2d 920, 923 (2021) (quoting *Doe v. State*, 421 S.C. 490, 504, 808 S.E.2d 807, 814 (2017)). "Not all classifications are unconstitutional, however, for '[t]he equal protection clause only forbids irrational and unjustified classifications.'" *Bodman v. State*, 403 S.C. 60, 69, 742 S.E.2d 363, 367 (2013) (quoting *In re Treatment & Care of Luckabaugh*, 351 S.C. 122, 147, 568 S.E.2d 338, 351 (2002)).

Lowe's argues SCDOR's assessment improperly divides contractors into two categories: those that also conduct retail sales and those that do not. Lowe's contends SCDOR "chose to arbitrarily impose a materially greater tax burden on Lowe's than is imposed on all other contractors doing the same work." However, the referenced contractors are *not* similarly situated to Lowe's because such contractors are not permitted to purchase their materials at wholesale.[4] Even if some contractors receive discounts from certain vendors for buying in bulk (or as otherwise negotiated), they are still required to pay a sales tax on the purchase price of their materials. Although Lowe's argues this presents a "greater tax burden" that affects its competitiveness, nothing prevents Lowe's from giving its customers a discount on materials purchased through its installation services contracts should it choose to do so in seeking a competitive advantage. In any event, the ALC did not err in rejecting the equal protection claim because SCDOR did not treat Lowe's differently than it treated similarly situated taxpayers.

## Conclusion

Based on the foregoing, the ALC's order is

---

[4] The ALC found the equal protection argument moot based on its finding that Lowe's acted as a retailer, not a contractor, in the disputed transactions.

**AFFIRMED.**

**VINSON, J., and LOCKEMY, A.J., concur.**