# THE STATE OF SOUTH CAROLINA
## In The Court of Appeals

Amazon Services, LLC, Appellant,

v.

South Carolina Department of Revenue, Respondent.

Appellate Case No. 2019-001706

---

Appeal From The Administrative Law Court
Ralph King Anderson, III, Administrative Law Judge

---

Opinion No. 6047
Heard February 14, 2023 – Filed January 24, 2024

---

**AFFIRMED**

---

John C. Von Lehe, Jr. and Bryson Moore Geer, both of
Nelson Mullins Riley & Scarborough, LLP, of
Charleston; Neil H. Conrad and Robert N. Hochman,
both of Sidley Austin LLP, of Chicago, Illinois;
Constantine L. Trela, Jr., of Chicago, Illinois; and
Benjamin J. Razi, Sean Akins, and Carter G. Phillips, all
of Washington, D.C., all for Appellant.

Tracey Colton Green, Chad Nicholas Johnston, and John
William Roberts, all of Burr & Forman LLP, of
Columbia; Jason Phillip Luther, of the South Carolina
Department of Revenue, of Columbia; and Lauren
Acquaviva, of Viva Law Firm, of Charleston, all for
Respondent.

Steve A. Matthews, of Haynsworth Sinkler Boyd, PA, of Columbia, for Amici Curiae Chamber of Commerce of the United States of America, Business Roundtable, Internet Association, South Carolina Chamber of Commerce, and Greater Columbia Chamber of Commerce.

Joshua Madison Tyler Felder, of Parker Poe Adams & Bernstein LLP, of Greenville; and Kay L. Hobart, of Parker Poe Adams & Bernstein LLP, of Raleigh, North Carolina, for Amicus Curiae Council on State Taxation.

Robert T. Bockman, of University of South Carolina School of Law, of Columbia, for Amici Curiae Tax Law Professors Tessa R. Davis and Clinton G. Wallace.

M. Dawes Cooke, Jr., Justin P. Novak, and John William Fletcher, all of Barnwell Whaley Patterson & Helms, LLC, of Charleston; and R. Gregory Roberts, of Roberts Law Group, PLLC, of White Plains, New York; all for Amicus Curiae Institute for Professionals in Taxation.

Edward Raymond Moore, III, of Murphy & Grantland, PA, of Columbia, and Alicia Pilar Mata, of Washington, D.C., both for Amicus Curiae Tax Executives Institute.

Samantha K. Trencs, of Eversheds Sutherland (US) LLP, of Washington, D.C.; Eric S. Tresh, Maria M. Todorova, and Chris R. Lee, all of Eversheds Sutherland (US) LLP, of Atlanta, Georgia; all for Amicus Curiae The South Carolina Manufacturers Alliance.

Jennifer Butler Routh, of McDermott Will & Emery, of Washington, D.C., for Amicus Curiae National Retail Federation.

---

**VINSON, J.:** In this contested case, Amazon Services, LLC (Amazon Services) appeals the decision of the Administrative Law Court (ALC) affirming the South

Carolina Department of Revenue's (the Department's) determination assessing it approximately $12.5 million in taxes, penalties, and interest for the period of January 1, 2016, to March 31, 2016.  Amazon Services argues that (1) as an online marketplace operator, it owed no duty to collect and remit sales tax on products sold on its marketplace by third parties under the Sales and Use Tax Act (the Act)[1] in effect during 2016; (2) the statute in effect in 2016 could reasonably be read not to impose the obligation to collect and remit sales tax for third-party sales upon online marketplace facilitators such that the statute is ambiguous and must be construed against the Department; and (3) imposing a sales tax obligation on it for third-party sales during the relevant period violates the United States and South Carolina constitutional guarantees of fair notice and equal protection.  We affirm.

## BACKGROUND

Amazon Services, a subsidiary of Amazon.com, Inc. (Amazon), operates the Amazon.com website (the Marketplace).  Amazon Services is registered in South Carolina as a retailer for the purposes of the Act.  Amazon's business model includes the retail sale of products through the Marketplace.  There are three primary sources of products listed for sale on the Marketplace: Amazon, Amazon affiliates,[2] and third-party sellers.

In 2011, the legislature passed the Distribution Facility Sales Tax Exemption (the Moratorium), primarily to encourage Amazon's investment in South Carolina.  *See* § 12-36-2691.  The Moratorium provided a sales tax exemption for the five-year period from January 1, 2011, until December 31, 2015, for companies that built a distribution facility in South Carolina, provided certain conditions were met.  *Id.* In 2011 and 2012, an Amazon subsidiary built two distribution facilities in South Carolina.  At the time, the dormant Commerce Clause of the United States Constitution allowed the State of South Carolina to impose sales tax only upon third-party sellers that had a physical presence in the state.  *See Nat'l Bellas Hess, Inc. v. Dep't of Revenue of the State of Ill.*, 386 U.S. 753 (1967) (suggesting a business was required to have a physical presence in the taxing state to form the requisite nexus to the state); *Quill Corp. v. North Dakota*, 504 U.S. 298 (1992) (requiring, pursuant to the dormant commerce clause, a physical presence for a

---

[1] S.C. Code Ann. §§ 12-36-5 to -2692 (2014 & Supp. 2023).
[2] Amazon affiliates that engage in retail sales include: AmazonFresh, LLC; Fabric.com; Woot, Inc.; Zappos Retail, Inc.; 6pm.com, LLC; Amazon Web Services, Inc.; Quidsi Retail, LLC; IMDb.com, Inc.; BOP, LLC, Amazon.com, LLC; Warehouse Deals, LLC; and Amazon Digital Services, LLC.

business to have a substantial nexus with a taxing state such that it would be subject to that state's sales and use tax). Thus, by building distribution facilities in South Carolina, Amazon established the physical nexus required for the imposition of sales tax.[3] Upon expiration of the Moratorium, Amazon Services began collecting and remitting sales tax for the retail sales of Amazon and its affiliates rather than all of the sales occurring on the Marketplace.

The Department conducted an audit and assessed Amazon Services $12,490,502.15 in taxes, penalties, and interest for the first quarter of 2016. Amazon Services protested the proposed assessment. The Department issued a determination, concluding Amazon Services was a "person in the business of selling tangible personal property at retail, and the Department properly included all the proceeds from [its] online sales in the tax base." Specifically, the Department found Amazon Services owed sales and use tax in relation to the sale of products by third-party sellers occurring on the Marketplace.[4] Amazon Services requested a contested case hearing before the ALC. The ALC held the contested case hearing in February 2019, after which it issued an order affirming the Department's determination.[5] This appeal followed.

**FACTS AND PROCEDURAL HISTORY**

At the time of the contested case hearing, there were about 2.5 million third-party sellers on the Marketplace. An Amazon Services' employee, Christopher Poad, testified at the hearing and described Amazon's business model with respect to its own retail sales and sales of products by third-party sellers. He explained any third-party seller wishing to list its products for sale on the Marketplace must create an account and agree to the terms of Amazon's Business Solutions Agreement (the BSA). The BSA governs the relationship between Amazon Services and the third-party sellers as well as Amazon subsidiaries, including

---

[3] In 2018, the United States Supreme Court decided *South Dakota v. Wayfair, Inc.* and held a physical presence is no longer required to establish a substantial nexus with the taxing state. 138 S. Ct. 2080, 2099 (2018).

[4] Amazon Services already collected and remitted sales tax on its sales and the sales of Amazon affiliates; thus, sales tax on these transactions is not at issue.

[5] The ALC noted the Department issued the proposed assessment without determining whether any merchants had already submitted sales tax for their sales in South Carolina and the Department agreed it would be inappropriate to collect sales tax for the same transaction from two different taxpayers.

Amazon Payments, Inc. and Amazon Fulfillment Services, Inc.[6]  Poad testified Amazon Payments, Inc. provides payment processing services to third-party sellers.  Amazon Fulfillment Services, Inc. operates Amazon's warehouses and provides optional fulfillment services to third-party sellers, referred to as Fulfillment by Amazon, including storage, packaging, shipping, and delivery.

The BSA provides that Amazon Payments acts as the third-party seller's agent for purposes of processing payments, receiving and holding sales proceeds on the seller's behalf, remitting sales proceeds to the seller's bank account, charging the seller's credit card, and paying Amazon and its affiliates amounts the seller owes pursuant to the BSA and related services.  The BSA states, "We will also receive all Sales Proceeds on your behalf for each of these transactions and will have exclusive rights to do so . . . ."  The seller must agree "that buyers satisfy their obligations to you for [y]our [t]ransactions when we receive the [s]ales [p]roceeds."  The BSA further provides the seller's sales proceeds will be held in an account with Amazon Payments and that prior to disbursing the funds to the seller, Amazon Payments may combine such proceeds with the funds of other sellers, invest them, or use them for other legally permissible purposes.  According to the BSA, Amazon Services will "remit to [the seller] on a bi-weekly (14-day) (or at our option, more frequent) basis . . . any sales proceeds received by us or our Affiliates" less the fees the seller owes to Amazon Services.  The BSA expressly disclaims the existence of an agency relationship between the third-party sellers and Amazon Services, except for Amazon Payments' role as a payment processing agent.  With regard to tax collection, the BSA requires third-party sellers to agree to be responsible for the collection, reporting, and payment of all taxes.  Amazon Services will collect sales tax if a third-party seller chooses to pay for its tax collection service, but this service is only available to professional sellers or Amazon Webstore sellers—not individual sellers.  However, even if a third-party seller uses this tax collection service, Amazon Services collects the tax from the customer and then remits those funds back to the third-party seller to pay to the taxing authority.

Under the BSA, a seller may set any price it wishes for its product except that the seller must offer the price that is at least as favorable to Amazon site users as any price it offers such product through any other sales channel.  In addition, third-party sellers must pay Amazon Services fees to sell their products on the

---

[6] The BSA describes these entities as "affiliates," which it defines to mean "with respect to any entity, any other entity that directly or indirectly controls, is controlled by, or is under common control with that entity."

Marketplace.  These fees include "Referral Fees," which are calculated based on the sales price and Amazon's categorization of the type of product sold.  These fees range from six to forty-five percent, with a median fee of fifteen percent.

With regard to a third-party seller's communications with customers, the BSA precludes third-party sellers from receiving or requesting payments directly from customers and third-party sellers must agree to only use the tools and methods Amazon Services provides to communicate with Amazon users regarding transactions.

During the contested case hearing, the ALC admitted evidence of the Department's sworn statements made in 2018 related to proposed "marketplace facilitator" legislation "to the extent it might be probative."  It concluded, however, the evidence had little probative value because the Department's interpretation was not entitled to deference and therefore there was no need to impeach its interpretation. The ALC further ruled the Department's statements in the context of the proposed legislation after the Department issued its determination did not render the Act ambiguous because it was the ALC's province, rather than the Department's, to interpret the law and determine whether the law was ambiguous.

The ALC concluded Amazon Services was in the business of selling tangible personal property at retail for the purposes of the Act.  It found Amazon Services was not merely a conduit or intermediary but that its actions demonstrated it was in the business of selling pursuant to section 12-36-910(A).  The ALC determined Amazon Services accepted consideration from customers because it initially directly received consideration for the sale and transferred the remaining funds to the seller after deducting its fees.  The ALC further stated, Amazon Services' compensation was, in part, directly tied to the amount of sales it could generate, not for any one seller's products, but on the Marketplace as a whole.  The ALC concluded Amazon Services indirectly retains a share of the profits from each sale through the Referral Fee.  The ALC also found Amazon Services acted as third-party sellers' agent with respect to the sale of the third-party sellers' goods, regardless of whether a formal agency relationship was established.  In addition, the ALC found Amazon Services and third-party sellers had a "consignment-type" relationship.  The ALC further found the level of control Amazon Services exercised over the Marketplace and the third-party transactions indicated it was in the business of selling on the Marketplace.  The ALC concluded that although third-party sellers set their own pricing, Amazon Services benefited from the parameters governing pricing because it received a profit from every sale through

its fees while also ensuring the offers listed on the Marketplace were the most attractive offers, which encouraged more sales on the Marketplace.

Finally, the ALC determined no constitutional violations occurred. The ALC concluded Amazon presented no evidence the Department imposed or attempted to impose pending legislation on Amazon Services to obligate it to remit sales and use tax for these transactions such that its actions violated the due process clause. Rather, it concluded the Department applied the existing tax scheme to a relatively new business model. The ALC rejected Amazon's argument that the Department's actions violated its equal protection rights. The ALC found Amazon Services failed to submit any evidence specifically identifying online marketplaces and showing such other online marketplaces were similarly situated.

**ISSUES ON APPEAL**

I. Did the ALC err in concluding that, under the Act in effect in 2016, Amazon Services owed a duty to collect and remit sales tax on products sold on the Marketplace by third-party sellers?

II. Did the ALC err in concluding the statute in effect in 2016 could not reasonably be read not to impose the obligation upon Amazon Services to collect and remit sales tax for third-party sales such that the statute was ambiguous and must be construed against the Department?

III. Did the ALC err in concluding that imposing a sales tax obligation on Amazon Services for third-party sales during the relevant period did not violate constitutional guarantees of fair notice or equal protection?

**STANDARD OF REVIEW**

When reviewing a final decision of the ALC,

> [This] court may not substitute its judgment for the judgment of the [ALC] as to the weight of the evidence on questions of fact. Th[is] court . . . may affirm the decision or remand the case for further proceedings; or, it may reverse or modify the decision if the substantive rights of the petitioner have been prejudiced because the finding, conclusion, or decision is:

(a) in violation of constitutional or statutory provisions;

(b) in excess of the statutory authority of the agency

(c) made upon unlawful procedure;

(d) affected by other error of law;

(e) clearly erroneous in view of the reliable, probative, and substantial evidence on the whole record; or

(f) arbitrary or capricious or characterized by abuse of discretion or clearly unwarranted exercise of discretion.

S.C. Code Ann. § 1-23-610(B) (Supp. 2023).

"Questions of statutory interpretation are questions of law, which [the appellate c]ourt is free to decide without any deference to the [ALC]." *Rent-A-Ctr. E., Inc. v. S.C. Dep't of Revenue*, 425 S.C. 582, 587, 824 S.E.2d 217, 219 (Ct. App. 2019) (alterations in original) (quoting *Duke Energy Corp. v. S.C. Dep't of Revenue*, 415 S.C. 351, 355, 782 S.E.2d 590, 592 (2016)).

**LAW AND ANALYSIS**

**I. Sales and Use Tax**

Amazon Services argues that, under the law in effect in 2016, it was not the "seller" of third-party products. Amazon Services argues the *Travelscape*[7] decision does not support the ALC's conclusion because the website operator in that case was a price-setter as opposed to a marketplace operator. Amazon Services argues substantial evidence does not support the ALC's conclusion that it was "in the business of selling" under section 12-36-910(A). It contends it is a service provider and therefore not responsible for collecting and remitting sales tax. Amazon Services further contends its interpretation of section 12-36-70 is reasonable and therefore the ALC should have construed the statute in its favor pursuant to the holding in *Alltel Communications v. South Carolina Department of Revenue*, 399 S.C. 313, 731 S.E.2d 869 (2012). We disagree.

---

[7] *Travelscape, LLC v. S.C. Dep't of Revenue*, 391 S.C. 89, 705 S.E.2d 28 (2011).

We find the ALC did not err in determining Amazon Services was engaged in the business of selling tangible personal property at retail and was therefore responsible for collecting and remitting sales tax on sales of tangible personal property owned by third parties occurring on the Marketplace.[8]

The Act provides, "A sales tax, equal to five percent of the gross proceeds of sales, is imposed upon every person *engaged or continuing within this State in the business of selling* tangible personal property at retail." § 12-36-910(A) (emphasis added). "'Business' includes all activities, with the object of gain, profit, benefit, or advantage, *either direct or indirect*." § 12-36-20 (emphasis added).

> "Retailer" and "seller" include every person:
>
> (1)(a) selling or auctioning tangible personal property *whether owned by the person or others*;
>
> . . .
>
> (c) renting, leasing, or otherwise furnishing tangible personal property for a consideration;
> . . .
>
> (2)(a) maintaining a place of business or qualifying to do business in this [s]tate; or
>
> (b) not maintaining an office or location in this [s]tate but soliciting business by direct or indirect representatives, manufacturers agents, distribution of catalogs, or other advertising matter or by any other means, and by reason thereof receives orders for tangible personal property or for storage, use, consumption, or distribution in this [s]tate.
>
> The [D]epartment, when necessary for the efficient administration of this chapter, may treat any salesman, representative, trucker, peddler, or canvasser as the agent of the dealer, distributor, supervisor, employer, or other

---

[8] Unless otherwise specified, our references to "the Act" refer to the version in effect in 2016.

person under whom they operate or from whom they obtain the tangible personal property sold by them, regardless of whether they are making sales on their own behalf or on behalf of the dealer, distributor, supervisor, employer, or other person. The [D]epartment may also treat the dealer, distributor, supervisor, employer, or other person as a retailer for purposes of this chapter.

§ 12-36-70 (emphasis added).

"Sale" and "purchase" mean any transfer, exchange, or barter, conditional or otherwise, of tangible personal property for a consideration including:

(1) a transaction in which possession of tangible personal property is transferred but the seller retains title as security for payment, including installment and credit sales;

(2) a rental, lease, or other form of agreement;

(3) a license to use or consume; and

(4) a transfer of title or possession, or both.

§ 12-36-100.

First, we hold the statutes at issue were not ambiguous and therefore do not require us to resolve any substantial doubt in Amazon Services' favor.

"The cardinal rule of statutory construction is to ascertain and effectuate the intent of the legislature." *Hodges v. Rainey*, 341 S.C. 79, 85, 533 S.E.2d 578, 581 (2000); *see also McClanahan v. Richland Cnty. Council*, 350 S.C. 433, 438, 567 S.E.2d 240, 242 (2002) ("All rules of statutory construction are subservient to the one that legislative intent must prevail if it can be reasonably discovered in the language used, and that language must be construed in light of the intended purpose of the statute."). "The usual rules of statutory construction apply to the interpretation of tax statutes." *Multi-Cinema, Ltd. v. S.C. Tax Comm'n*, 292 S.C. 411, 413, 357 S.E.2d 6, 7 (1987). "[W]here the language relied upon to bring a particular person within a tax law is ambiguous or is reasonably susceptible of an

interpretation that will exclude such person, then the person will be excluded, any substantial doubt being resolved in his favor." *Alltel Commc'ns, Inc.*, 399 S.C. at 321, 731 S.E.2d at 873 (quoting *Cooper River Bridge, Inc. v. S.C. Tax Comm'n*, 182 S.C. 72, 76, 188 S.E. 508, 509-10 (1936)). However, "[i]f a statute's language is plain and unambiguous, and conveys a clear and definite meaning, there is no occasion for employing rules of statutory interpretation and the court has no right to look for or impose another meaning." *Paschal v. State Election Comm'n*, 317 S.C. 434, 436, 454 S.E.2d 890, 892 (1995).

In *Alltel*, our supreme court found the term "telephone company" was ambiguous because it was not defined in the statute. *Alltel Commc'ns, Inc.*, 399 S.C. at 316, 321, 731 S.E.2d at 870, 873. Here, however, the relevant terms—"seller," "business," and "sale"—are terms defined in the statute and we find there is no substantial doubt the definitions provided in the Act capture Amazon Services' activities. We therefore conclude the Act was not ambiguous. *See Rent-A-Ctr. E., Inc.*, 425 S.C. at 589, 824 S.E.2d at 221 (holding section 12-36-910(A) was unambiguous and therefore the ALC "was in no position to apply rules of statutory interpretation" and did not err in failing to construe it in the taxpayers' favor). Thus, there is no ambiguity to resolve in Amazon Services' favor.

Amazon Services further asserts the Department "told the legislature via sworn testimony that there was doubt that the statute could be applied to online marketplace facilitators like Amazon Services," and that the legislature specifically amended the statute in 2019 "to provide the clarity that the Department admitted was missing." Amazon Services argues this testimony confirmed the statute needed to be changed to impose sales tax obligations upon marketplace facilitators and demonstrated the reasonableness of Amazon Services' interpretation. Amazon Services argues this showed the Act was ambiguous and should therefore be construed in its favor. We disagree.

"When the Legislature adopts an amendment to a statute, this [c]ourt recognizes a presumption that the Legislature intended to change the existing law. Nonetheless, a subsequent statutory amendment may also be interpreted as clarifying original legislative intent." *Duvall v. S.C. Budget & Control Bd.*, 377 S.C. 36, 46, 659 S.E.2d 125, 130 (2008) (citation omitted).

> We recognize the rule of construction that the adoption of
> an amendment which materially changes the terminology
> of a statute under some circumstances indicates
> persuasively and raises a presumption that a departure

from the original law was intended.  However, like all rules of construction, the presumption is merely an aid in interpreting an ambiguous statute and determining the legislative intent.

*N. River Ins. Co. v. Gibson*, 244 S.C. 393, 398, 137 S.E.2d 264, 266 (1964).

We acknowledge the General Assembly amended the Act in 2019 to expressly include marketplace facilitators.  *See* Act No. 21, 2019 S.C. Acts 101-02.  It was titled:

> An act to amend the code of laws of South Carolina, 1976, by adding section 12-36-71 so as to define "marketplace facilitator"; to amend sections 12-36-70, 12-36-90, and 12-36-130, all relating to sales tax definitions, so as to further inform marketplace facilitators of their requirements; and to amend section 12-36-1340, relating to the collection of sales tax by retailers, so as to further inform marketplace facilitators of their requirements.

*Id.*  However, as we stated, we hold the Act is unambiguous and therefore we need not "look for or impose another meaning" beyond the plain language of the Act.  *See Paschal*, 317 S.C. at 437, 454 S.E.2d at 892.  Further, the 2019 act contained prefatory language stating it "shall not be construed as a statement concerning the applicability of the [Act] to any sales and use tax liability in matters currently in litigation or being audited."  Act No. 21, 2019 S.C. Acts 102.  Thus, we need not consider either the Department's statements made in the context of the proposed amendments to the Act or the amendments themselves in deciding this issue.  *See N. River Ins. Co.*, 244 S.C. at 398, 137 S.E.2d at 266 (opining that the presumption that the adoption of an amendment that materially changes the terminology of a statute means a departure from the original law was intended "is merely an aid in interpreting an ambiguous statute and determining the legislative intent").  Instead, we consider the language of the Act as it existed in 2016.  Regardless, the use of the words "further inform" in the title of the 2019 act to amend the Act indicates the Act already encompassed persons with business models like those of Amazon Services.  Based on the foregoing, we hold the statutes at issue were not ambiguous and therefore there is no substantial doubt that would require resolution in Amazon Services' favor.

As to Amazon Services' contention the ALC stated the Act was not clear, we hold the ALC was not bound by this statement because the ALC made this observation during the hearing but made no such finding in the written order. *See Ford v. State Ethics Comm'n*, 344 S.C. 642, 646, 545 S.E.2d 821, 823 (2001) ("Until written and entered, the trial judge retains discretion to change his mind and amend his oral ruling accordingly. The written order is the trial judge's final order and as such constitutes the final judgment of the court." (citation omitted)).

Next, we find the evidence supports the ALC's finding that Amazon Services was engaged in the business of selling tangible personal property at retail and was therefore responsible for collecting and remitting sales tax on such transactions pursuant to section 12-36-910(A).

As an initial matter, Amazon Services argues that it and Amazon Payments are separate entities and the actions of Amazon Payments are not attributable to Amazon Services. It asserts that when a customer purchases a product from a third-party seller, Amazon Payments—not Amazon Services—receives the sales proceeds and then remits those funds to the third-party seller. It contends the ALC incorrectly attributed Amazon Payments' actions to Amazon Services with no justification for "piercing the corporate veil." We reject this form-over-substance argument. *See Frank Lyon Co. v. United States*, 435 U.S. 561, 573 (1978) ("In the field of taxation, administrators of the laws and the courts are concerned with substance and realities, and formal written documents are not rigidly binding." (quoting *Helvering v. Lazarus & Co.*, 308 U.S. 252, 255 (1939))); *see also Scripto, Inc. v. Carson*, 362 U.S. 207, 211 (1960) (setting aside the formal structure of the contractual arrangements of the company and holding "[t]o permit such formal 'contractual shifts' to make a constitutional difference would open the gates to a stampede of tax avoidance"). In addition, the Act provides "any group or combination acting as a unit" is a "person" within the meaning of the Act. *See* § 12-36-30. Even the BSA treats these entities as the same because it refers to Amazon Services and Amazon Payments as "we." Thus, we find the ALC did not err in treating the actions of Amazon Payments as the actions of Amazon Services.

Both parties argue *Travelscape* should be read in their favor. We find *Travelscape* provides only limited guidance. There, the operator of Expedia.com (Travelscape) negotiated a rate for hotel rooms with hotels, offered those hotel reservations to customers for booking on Expedia.com, and charged the customer's credit card for the transaction. 391 S.C. at 95, 705 S.E.2d at 31. After the customer checked out of the hotel, the hotel invoiced Travelscape for the net room rate and sales tax owed by the hotel. *Id.* Travelscape would then remit the net room rate and tax

recovery charge to the hotel but retained facilitation and service fees. *Id.* at 95-96, 705 S.E.2d at 31. Travelscape did not pay sales tax on these fees. *Id.* at 96, 705 S.E.2d at 31. Our supreme court rejected Travelscape's argument that it was not "in the business of furnishing accommodations" within the meaning of section 12-36-920(E) because it did not own or operate hotels. *Id.* at 99, 705 S.E.2d at 33. Travelscape argued it was "only an intermediary providing hotel reservations to transients and d[id] not physically provide sleeping accommodations." *Id.* Our supreme court, however, concluded the definition of "furnish" encompassed "the activities of entities such as Travelscape who, whether directly or indirectly, provide hotel reservations to transients for consideration." *Id.* at 101, 705 S.E.2d at 34. The import of the *Travelscape* decision with respect to this case is that our supreme court interpreted section 12-36-920(E) of the Act broadly. We likewise interpret section 12-36-910(A) broadly.

Because section 12-36-20 itself defines "business" broadly, we hold the record shows Amazon Services' activities in connection with third-party sales on the Marketplace were with the object of achieving a profit or advantage. *See* § 12-36-20 ("'Business' includes all activities, with the object of gain, profit, benefit, or advantage, *either direct or indirect*." (emphasis added)). Specifically, Amazon Services' agreement with third parties required the third-party sellers to pay a per-item fee—the Referral Fee—based upon a percentage of the item's sales price and the category of the item sold. This is a profit from the third-party seller's sale of the item. *See id.* The restrictions and requirements placed upon third-party sellers in the Marketplace give Amazon Services an advantage over other sales channels. *See id.* For instance, the fact a third-party seller must offer its items at a price at least as low as it offers such item through any other sales channel is designed to ensure the buyer purchases the item from the Marketplace, thus giving Amazon Services an indirect advantage over the other sales channels.

Next, we hold Amazon Services is a seller within the meaning of section 12-36-70. Amazon Services is the only party a buyer encounters during the sales transaction. The buyer receives a confirmation from Amazon and Amazon conducts the transaction. Amazon Services, through Amazon Payments, processes the transaction, holds the funds, and remits those funds (less its fees) to the seller. Amazon Services, through Amazon Payments, has control over these funds until they are remitted to the third-party seller on a biweekly basis. The BSA provides that Amazon Payments may invest the funds and the third-party seller is not entitled to any interest. Although the items sold may be owned by the third-party, section 12-36-70 does not require the seller own the goods sold. We find the foregoing demonstrates Amazon Services is a seller under section 12-36-70.

Further, we find these transactions constitute sales as defined by 12-36-100 because Amazon Services receives payment in exchange for the items even if the items are not in its physical possession.  Regardless of whether Amazon Services has title or possession of the items, it requires the third-party seller to send the items to the purchaser or refund the sale if it does not do so.  Thus, Amazon Services effects the transfer of the goods and receives consideration.  Although it remits the proceeds to the third-party seller, it retains the fees that the third-party seller is responsible for paying to it for the transaction, including the Referral Fee based upon the price of the item.  Accordingly, we hold the definition of sale in section 12-36-100 encompasses these transactions.[9]

We reject Amazon Services' argument that it is merely a service provider.  The parties do not dispute that customers making purchases on the Marketplace are buying goods, not services.  Thus, we hold substantial evidence supports the ALC's finding Amazon Services is a service provider only with respect to its relationship to the third-party seller.  *See Boggero v. S.C. Dep't of Revenue*, 414 S.C. 277, 285, 777 S.E.2d 842, 846 (Ct. App. 2015) ("[T]he analysis under the true object test focuses on factual questions; namely, whether the customer's purpose for entering the transaction was to procure a good or a service.").

Amazon Services further argues the ALC lacked a legal basis for applying the novel concept of a "point of sale" and argues the ALC erred by finding it had a "consignment-type" relationship with the third-party sellers.  It asserts its relationship does not function like a consignment relationship because it does not control the inventory, decide what to sell, or set the price.  The ALC analogized the sales at issue here to consignment sales.  The ALC additionally found Amazon Services accepts customer payments at the point of sale—i.e., at the time the customer purchases the product—for all transactions on the Marketplace.  Consideration of these concepts, although illustrative, is not necessary in determining whether Amazon Services was in the business of selling within the meaning of the Act.  We find the ALC considered these concepts for purposes of

---

[9] We note that, as the ALC observed, because Amazon Services exercises control over the transaction, third-party sellers do not have the opportunity to collect sales tax when the transaction occurs; therefore, without Amazon Services collecting the tax, it is unlikely it would ever be collected.  This would not effectuate the legislative intent of the Act.  *See Hodges*, 341 S.C. at 85, 533 S.E.2d at 581 ("The cardinal rule of statutory construction is to ascertain and effectuate the intent of the legislature.").

illustrating the practical aspects of sales occurring on the Marketplace in applying the facts of this case to the Act. We therefore conclude the ALC's application of these concepts does not require reversal. *See Cox v. Cox*, 290 S.C. 245, 248, 349 S.E.2d 92, 93-94 (Ct. App. 1986) (holding the burden is on the appellant to show the trial court committed reversible error).

Amazon Services additionally argues that in South Carolina Revenue Ruling 18-14,[10] the Department took the position that third-party sellers were the sellers of the products they sold in an online marketplace for purposes of calculating a remote seller's "gross revenue" from sales in South Carolina to determine if the requisite nexus required under *Wayfair* existed. Amazon Services asserts this interpretation demonstrates the reasonableness of its own interpretation of the statute. We find this argument is unpreserved because the ALC did not address this argument in its final order and Amazon Services did not seek reconsideration of this issue. *See Brown v. S.C. Dep't of Health & Env't Control*, 348 S.C. 507, 519, 560 S.E.2d 410, 417 (2002) ("[I]ssues not raised to and ruled on by the AL[C] are not preserved for appellate consideration."); *Home Med. Sys., Inc. v. S.C. Dep't of Revenue*, 382 S.C. 556, 560-63, 677 S.E.2d 582, 584-86 (2009) (holding rule 59(e), SCRCP, motions to reconsider are permitted in ALC proceedings and often required for issue preservation purposes). Regardless, Revenue Ruling 18-14 states,

> [U]nder South Carolina sales and use tax law, the sales made via [a] marketplace are sales by the marketplace, and the marketplace is required to . . . remit the sales and use tax on the marketplace's 'gross proceeds of sales,'[11] which [would] include[] the . . . sales of products owned by [a] remote seller but sold by the marketplace.

In other words, the ruling treats online marketplaces as sellers in accordance with section 12-36-70 and states they are required to collect and remit sale and use tax under the Act. Therefore, Revenue Ruling 18-14 does not support Amazon Services' position.

---

[10] S.C. Dep't of Revenue, S.C. Rev. Rul. 18-14, Retailers without a Physical Presence ("Remote Sellers") - Economic Nexus (2018), 2018 WL 4944851 (stating the Department's position regarding remote sellers in accordance with *Wayfair*, 138 S. Ct. at 2099, and section 12-36-70).

[11] § 12-36-90 (defining gross proceeds generally as "the value proceeding or accruing from the sale, lease, or rental of tangible personal property").

Finally, we are not persuaded by Amazon Services' reference to the tax laws of other jurisdictions. Citing to laws that were passed between 2017 and 2019 in other states, Amazon Services contends that as of June 2020, thirty-six other states had passed "marketplace facilitator" laws and none of these states concluded a marketplace facilitator was liable for sales tax on third-party sales prior to the enactment of such laws. Amazon Services has failed to identify, which, if any, of these states had statutes substantially similar to sections 12-36-20, 12-36-70, and 12-36-910(A) in effect prior to the enactment of the marketplace facilitator laws. In its reply brief, Amazon Services cited to *Normand v. Wal-Mart.com USA, LLC*, 2019-00263 (La. 1/29/20), 340 So. 3d 615, which was not decided until after it filed its initial brief. In *Normand*, the Louisiana Supreme Court held the trial court erred by concluding the online marketplace was a "dealer" such that it was required to collect and remit sales tax under Louisiana law. *Id.* at pp. 19-26, 340 So. 3d at 627-32. We find *Normand* distinguishable because the statutes at issue there do not contain the same language as the statutes at issue here. *Compare* La. Stat. Ann. § 47:301(4)(b) ("'Dealer' includes every person who manufactures or produces tangible personal property for sale at retail, for use, or consumption, or distribution, or for storage to be used or consumed in a taxing jurisdiction. 'Dealer' is further defined to mean: . . . (b) Every person who sells at retail, or who offers for sale at retail, or who has in his possession for sale at retail, or for use, or consumption, or distribution, or storage to be used or consumed in the taxing jurisdiction, tangible personal property as defined herein."), *with* § 12-36-910(A) (2014) ("A sales tax, equal to five percent of the gross proceeds of sales, is imposed upon every person *engaged . . . in the business of selling* tangible personal property at retail." (emphasis added)), § 12-36-20 ("'Business' includes all activities, with the object of gain, profit, benefit, or advantage, *either direct or indirect*." (emphasis added)), *and* § 12-36-70(1)(a) (providing a "seller" includes every person "selling or auctioning tangible personal property *whether owned by the person or others*" (emphasis added)).

Based on the foregoing, we hold Amazon Services is a person engaged in the business of selling tangible personal property at retail with respect to sales occurring on the Marketplace and is therefore required to collect and remit sales tax on such sales. We further hold Amazon Services is a seller within the meaning of section 12-26-70 with respect to third-party sales on the Marketplace and that such transactions constitute sales under section 12-36-100. Accordingly, we affirm the ruling of the ALC.

## II. Constitutional Violations

Amazon Services argues the Department's attempt to collect sales taxes from Amazon Services for third-party sales during the first quarter of 2016 violates the South Carolina and federal constitutional guarantees of due process. Citing to *FCC. v. Fox Television Stations, Inc.*, 567 U.S. 239 (2012), it argues the Department's assessment was an attempt to retroactively apply the 2019 amendments to Amazon Services and thus violated the constitutional requirement of fair notice. Amazon Services next asserts that applying the 2019 amendments only to Amazon Services violated the constitutional guarantee of equal protection. It contends the Department singled out Amazon Services for retroactive enforcement of its interpretation. Amazon Services argues the Department's director admitted to the General Assembly that the current lawsuit would "pull up some retroactivity." Amazon Services argues the director testified that only Amazon Services had been forced to collect sales taxes on third-party sales before the 2019 amendment took effect. Amazon Services contends "[t]he Department had not attempted to collect sales tax from [it] or any other marketplace facilitator for third-party sales during the more than [fifteen]-year period that Amazon Services had been operating its marketplace." We disagree.

"A fundamental principle in our legal system is that laws which regulate persons or entities must give fair notice of conduct that is forbidden or required." *Fox Television Stations, Inc.*, 567 U.S. at 253. "This requirement of clarity in regulation is essential to the protections provided by the Due Process Clause of the Fifth Amendment." *Id.*; *see also* U.S. Const. amend. V ("No person shall be . . . deprived of life, liberty, or property, without due process of law . . . ."). "It requires the invalidation of laws that are impermissibly vague." *Fox Television Stations, Inc.*, 567 U.S. at 253. "[T]he void for vagueness doctrine addresses at least two . . . due process concerns: first, that regulated parties should know what is required of them so they may act accordingly; second, precision and guidance are necessary so that those enforcing the law do not act in an arbitrary or discriminatory way." *Id.*

We conclude the ALC did not err by finding Amazon Services has failed to show any constitutional violations. First, we find *Fox Television Stations* is inapplicable. There, the United States Supreme Court rejected the Federal Communications Commission's (the FCC's) attempt to retroactively apply a change in policy to two television stations for airing content that would have been permissible under the former policy. *Id.* at 249-55. Prior to issuing the determinations at issue in that case, the FCC had issued a ruling in 2004 in which it changed a preexisting indecency enforcement policy regarding the use of fleeting expletives. *Id.* at 248.

The prior policy distinguished between isolated and repeated broadcasts of indecent material and determined that as to the use of expletives, "deliberate and repetitive use in a patently offensive manner is a requisite to a finding of indecency." *Id.* at 246 (quoting *In the Matter of Pacifica Found., Inc. d/b/a Pacifica Radio L.A., Cal. of Kpfk-Fm L.A., Cal.*, 2 F.C.C. Rcd. 2698 (1987)). In the ruling changing the policy, the FCC stated "the mere fact that specific words or phrases are not sustained or repeated does not mandate a finding that material that is otherwise patently offensive to the broadcast medium is not indecent." *Id.* at 248. In addition, the FCC had released prior decisions that declined to find isolated and brief moments of nudity actionably indecent. *Id.* at 257. Given the FCC's prior decisions pertaining to brief nudity, the Court found the FCC "c[ould] point to nothing that would have given [the station] affirmative notice that its broadcast [of a brief shot of nude buttocks] would be considered actionably indecent." *Id.* Even though the broadcasts at issue took place in 2002 and 2003—prior to the 2004 ruling—the FCC applied the indecency policy established in the 2004 ruling to the earlier broadcasts and found the stations violated the policy by broadcasting fleeting expletives and nudity. *Id.* at 249. In vacating these determinations, the Supreme Court found, "The [FCC] failed to give [the stations] fair notice prior to the broadcasts in question that fleeting expletives and momentary nudity could be found actionably indecent." *Id.* at 258. Here, however, no evidence shows the Department attempted to retroactively apply the new law or policies to Amazon Services' conduct. Rather, the Department applied the sales tax law that was in place at the time. Thus, we find the ALC did not err in finding Amazon Services failed to show the Department violated the constitutional requirement of fair notice.

Amazon Services' argument the Department had not attempted to collect sales tax from it prior to 2016 is technically correct, but it ignores the context of the Department's actions. First, prior to the 2018 *Wayfair* decision, the Department could not lawfully collect sales tax from a seller that had no physical presence in this state. *See Wayfair, Inc.*, 138 S. Ct. at 2099 (holding a physical presence is no longer required to establish a substantial nexus with the taxing state); *see also Quill Corp.*, 504 U.S. at 309-18 (requiring a physical presence for a business to have a substantial nexus with a taxing state). Therefore, until Amazon Services established a physical presence in this state by opening its distribution centers, it was not subject to the Act. However, when it established such presence, the Moratorium ensured the Department would not collect any sales tax from it until the Moratorium expired. *See* § 12-36-2691(D)(1) (providing the Moratorium would cease to apply as of January 1, 2016). Once the Moratorium expired, the Department could—and did—impose sales tax upon Amazon Services' sales

occurring on the Marketplace.  This was not an attempt to retroactively apply subsequent legislation to Amazon Services' actions.  Rather, the Department applied the law that was in place at the time to Amazon Services' sales.  The fact the legislature later modified the law to specifically include marketplace facilitators does not establish the Act failed to provide fair notice to Amazon Services that third-party sales occurring on the Marketplace would be subject to sales tax.  Further, any statements the Department's director made in 2018 during hearings before the legislature are irrelevant to the Department's 2016 audit and our consideration of the law as it existed at the time of such audit.  *See Captain's Quarters Motor Inn, Inc. v. S.C. Coastal Council*, 306 S.C. 488, 490, 413 S.E.2d 13, 14 (1991) ("As a creature of statute, a regulatory body is possessed of only those powers expressly conferred or necessarily implied for it to effectively fulfill the duties with which it is charged."); *Bazzle v. Huff*, 319 S.C. 443, 445, 462 S.E.2d 273, 274 (1995) ("An administrative agency has only such powers as have been conferred by law and must act within the authority granted for that purpose."). Accordingly, we reject this argument.

Further, we find Amazon Services has failed to show an equal protection violation. "The South Carolina Constitution provides that no 'person shall be denied the equal protection of the laws.'" *Bodman v. State*, 403 S.C. 60, 69, 742 S.E.2d 363, 367 (2013) (quoting S.C. Const. art. I, § 3); *see also* U.S. Const. amend. XIV, § 1 ("No State shall . . . deprive any person of life, liberty, or property, without due process of law; nor deny to any person within its jurisdiction the equal protection of the laws."). "[T]o establish an equal protection violation, a party must show that similarly situated persons received disparate treatment." *TNS Mills, Inc. v. S.C. Dep't of Revenue*, 331 S.C. 611, 626, 503 S.E.2d 471, 479 (1998). "Where an alleged equal protection violation does not implicate a suspect class or abridge a fundamental right, the rational basis test is used." *Town of Hollywood v. Floyd*, 403 S.C. 466, 480, 744 S.E.2d 161, 168 (2013). "To prevail under the rational basis standard, a claimant must show similarly situated persons received disparate treatment, and that the disparate treatment did not bear a rational relationship to a legitimate government purpose." *Id.*  Amazon Services failed to present any evidence specifically identifying other online marketplaces and showing such marketplaces were similarly situated persons.  Further, Amazon Services failed to present any evidence that any such similarly situated persons received disparate treatment.  Thus, we find Amazon Services failed to show an equal protection violation.  Based on the foregoing, we find the ALC did not err in concluding Amazon Services failed to show any constitutional violations on behalf of the Department.

**CONCLUSION**

For the foregoing reasons, the ALC's order is

**AFFIRMED.**

**KONDUROS, J., and LOCKEMY, A.J., concur.**